**UNITED STATES of America, Appellee,**

v.

**Ralph MOON, Defendant–Appellant.**

**No. 923, Docket 90–1375.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1991.

Decided Feb. 15, 1991.

Adina Schwartz, The Legal Aid Soc., Federal Defender Services Unit, New York City, on the brief, for defendant-appellant.

Before KEARSE, WINTER, and ALTIMARI, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Ralph Moon appeals from a judgment of conviction entered in the United States District Court for the Northern District of New York, Howard G. Munson, *Judge*, following his plea of guilty to conspiring in violation of 21 U.S.C. § 846 (1988) to distribute approximately four pounds of marijuana and one kilogram of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988). He was sentenced principally to a 48-month term of imprisonment. On appeal, Moon contends that the district court erred in its application of the United States Sentencing Guidelines ("Guidelines") because (1) the Probation Department, in calculating Moon's base offense level, attributed to him double the appropriate quantity of cocaine, and (2) the court erroneously believed that one of the conspiracies of which Moon was convicted carried a five-year minimum prison term. For the reasons below, we find merit in both contentions, and we vacate the judgment of conviction and remand for resentencing.

## I. BACKGROUND

Moon and six others were indicted in April 1988 on several counts of drug trafficking, including one count of conspiracy from May 30, 1987, to December 31, 1987, to distribute marijuana (count 1), and one count of conspiracy from December 1, 1987, to March 30, 1988, to distribute cocaine (count 5). Moon, named in all seven counts of the indictment, pleaded guilty to counts 1 and 5 and agreed to cooperate with the government. He testified at the trial of the only defendant not to plead guilty, Alfred Labat. The evidence that emerged at the trial of Labat, whose conviction of the count 5 conspiracy was affirmed on appeal, *see United States v. La-*

John G. Duncan, Asst. U.S. Atty. (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Syracuse, N.Y., on the brief), for appellee.

*bat,* 905 F.2d 18 (2d Cir.1990), was as follows.

In the spring of 1987, Moon made several sales of small quantities of cocaine and marijuana to New York State police officer James Mathews, who was working undercover with the Federal Bureau of Investigation. In December 1987, Moon had several telephone conversations with Labat, who lived in Florida, with respect to the latter's efforts to obtain one-to-two kilograms of cocaine to sell to Moon at $17,000 to $18,000 per kilo.

On January 15, 1988, Mathews told Moon he was interested in purchasing one kilogram of cocaine. Moon suggested that they go to Florida to buy the cocaine from Labat for $18,000. After conferring with unindicted coconspirator Joseph Ray, Moon suggested as an alternative that Mathews could obtain the kilogram of cocaine from Ray for $30,000. Mathews did not immediately choose or reject either option.

On January 18, 1988, Moon received a call from Labat who offered to try to obtain one kilogram of cocaine and deliver it to Moon in New York for $22,000. During the next two days, Moon relayed this offer to Mathews, and Ray renewed his offer to provide a kilo for $30,000. Thereafter, "Ray decided to obtain the cocaine for sale to Mathews from another source at a lower price," *United States v. Labat,* 905 F.2d at 21, and on January 22, Ray purchased one kilo of cocaine from codefendant Randy Dentel; on January 29, Moon and Ray sold that kilogram to Mathews for $30,000. Moon did not thereafter pursue matters with Labat. The arrests and indictment soon followed.

## A. *The Supposed Quantity of Cocaine*

Following Labat's trial, the Probation Department prepared for the court a presentence report ("PSR") for the sentencing of Moon. Noting that it presented only an "abbreviated overview" of Moon's activities because the court was aware of Moon's extensive testimony at Labat's trial (PSR ¶ 10), the PSR described Moon's role in the cocaine conspiracy as follows:

Moon was heard negotiating to purchase one to two kilos of cocaine from Alfred Labat.... Moon had planned to obtain the cocaine from Labat for sale to Ray. Moon commits [*sic*] to a one kilo deal in December 1987 at a price of $17,000 to $18,000.... In late December the deal was put on hold as Ray, Moon's partner, could not raise the money to complete the sale.

Nevertheless, in mid-January 1988, Moon tells Labat he wants to purchase one kilogram of cocaine within the next three to eight days.... In a conversation three days later Labat advises Moon he will be able to obtain the cocaine and he makes arrangements with Moon to fly up to meet with him and then rendezvous for the actual transaction....

According to the prosecutor, Moon's deal to obtain a kilo of cocaine from Labat was never consumated [*sic*] because, through simultaneous negotiations with another supplier (Randy Dentel), Moon and Ray were able to arrange to buy cocaine at a better price.

(*Id.* ¶¶ 16–18.)

With respect to the offense-level computation, the PSR concluded that Moon's offenses involved approximately two kilograms of cocaine:

As for his known cocaine dealing, Moon was involved in three precursory sales involving 31.24 grams of cocaine. Additionally, he sold 998.2 grams of cocaine on January 29, 1988 and investigators [*sic*] reports and wiretaps confirm he committed to the purchase of a kilogram of cocaine from Alfred Labat in mid-January 1988 although the deal apparently never took place. The total amount of cocaine involved is 2,029.44 grams....

(*Id.* ¶ 24.) Based on two kilograms of cocaine, plus the amounts of marijuana involved, the PSR concluded that Moon's base offense level was 28. Moon's total offense level, after an upward adjustment for his role in the offenses and a downward adjustment for his acceptance of responsibility, was also 28.

Under the Guidelines, the total imprisonment range for level 28 was 78–97 months.

The PSR noted that a departure from the Guidelines might be warranted by the substantial assistance Moon had provided at the Labat trial and by his willingness to testify at other trials, which "[u]ndoubtedly" had caused other codefendants to plead guilty. (*Id.* ¶ 53.)

### B. *The Supposed Five–Year Minimum*

Throughout the district court proceedings involving Moon, it was assumed that the minimum term of imprisonment required by § 846 for the count 5 conspiracy was five years. *See* 21 U.S.C. § 841(b)(1)(B) (person convicted of certain substantive § 841(a) violations "shall be sentenced to a term of imprisonment which may not be less than 5 years"), and *id.* § 846 (making this penalty applicable to conspiracy to violate § 841(a), effective November 18, 1988). The plea agreement stated that Moon faced a minimum prison term of five years, and it stated that the government would move for a downward departure pursuant to 18 U.S.C. § 3553(e) (1988). That section states, in pertinent part, as follows:

> (e) Limited authority to impose a sentence below a statutory minimum.—Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

The PSR likewise noted that the government would move for a downward departure pursuant to this section. (PSR ¶ 54.)

At the sentencing hearing, the court, noting that the Guidelines called for incarceration for 78–97 months and that the Probation Department had recommended a sentence of 60 months, stated that in the court's view, a larger downward departure was warranted. It stated that

> in imposing this sentence [the court] departs from the guidelines and imposes a sentence below the guidelines in accordance with 5–K–1.1 of the Sentencing

Guideline Act 18 United States Code 3553(E) on motion of the Government. (Sentencing Transcript 8.)

The court sentenced Moon to, *inter alia,* a period of 48 months' imprisonment.

### II. DISCUSSION

On appeal, Moon contends (1) that the court erred in accepting the PSR's conclusion that his base offense level should be calculated on the basis of two kilograms of cocaine, and (2) that the five-year minimum sentence provision of § 846 did not apply to him because his conduct preceded the date of the amendment making that minimum applicable to conspiracy offenses. He urges that his sentence be vacated and the case be remanded to the district court for resentencing on the proper basis. The government argues (a) that Moon has waived his present contentions because they were not raised in the district court, (b) that his challenge to the quantification of the cocaine lacks merit, and (c) that given the substantial downward departure by the court to 48 months, Moon was not prejudiced by the erroneous assumption that he faced a statutory minimum of five years. For the reasons below, we agree with Moon's contentions and remand for resentencing.

### A. *Appealability*

Although the extent of a downward departure from the range of imprisonment prescribed by the Guidelines is not generally reviewable on appeal, an appeal does lie where a sentencing decision is based on a "demonstrable error of law." *United States v. Colon,* 884 F.2d 1550, 1553 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989). As with other contentions raised on appeal, the defendant must normally present his argument to the district court in order to preserve the contention for review on appeal. *See, e.g., United States v. Tillem,* 906 F.2d 814, 827 (2d Cir.1990) (severance); *United States v. Irabor,* 894 F.2d 554, 555 (2d Cir.1990) (Guidelines contention); *United States v. Carson,* 702 F.2d 351, 369 (2d Cir.) (objection to evidence), *cert. denied,* 462 U.S.

1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983); *United States v. Vasquez,* 638 F.2d 507, 530 n. 15 (2d Cir.1980) (existence of probable cause to arrest), *cert. denied,* 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981). In the context of the Guidelines, however, we have recently stated that

> where claims of major errors in the application of the Guidelines are presented for the first time on appeal, we should, during the infancy of the Guidelines, reach the merits at least so long as the failure to raise an issue was not a calculated decision. This policy also expedites appellate review of disputed issues involving application of the Guidelines.

*United States v. McCall,* 915 F.2d 811, 814 (2d Cir.1990); *see also United States v. Irabor,* 894 F.2d at 555 (although claims of incorrect applications of Guidelines not properly preserved, "we nevertheless address them here since 'they involve matters of law under a novel and potentially complex scheme'" (quoting *United States v. Taylor,* 868 F.2d 125, 126 (5th Cir.1989)).

Moon's arguments present serious questions of law, and we see no indication in the record that Moon deliberately failed to present them to the district court. Accordingly, we exercise our discretion to entertain this appeal.

**B.** *The Proper Quantification of the Cocaine With Respect to the Calculation of Moon's Base Offense Level*

■ The PSR calculated that the quantity of cocaine attributable to Moon was two kilograms because (1) he "commit[ted]" to obtain one kilo from Labat, and (2) Moon's coconspirator Ray in fact obtained one kilo from Dentel. The government seeks to support this calculation by pointing out that the offense of conspiracy is completed when the members reach agreement, regardless of whether or not the objective of the conspiracy is ever achieved. *See, e.g., United States v. Labat,* 905 F.2d at 21. It argues that since Moon entered into an agreement to obtain one kilogram from Labat, the conspiracy with Labat involved one kilogram of cocaine though the purchase from Labat was never made. In addition, since one kilogram of cocaine was obtained from Dentel, the conspiracy involved a second kilogram of cocaine.

Moon argues, however, that all of the pertinent negotiations and agreements were directed toward the sale of a single kilogram of cocaine to Mathews. Though Moon entered into an agreement to purchase one kilo from Labat, that was the kilo that he meant to sell to Mathews, and the reason he did not make that purchase from Labat was that he obtained that quantity of cocaine at a better price from another person. Moon argues that in effect he was shopping for the best deal he could find on one kilogram of cocaine and that he should therefore be sentenced on the basis of a one-kilogram, not a two-kilogram, quantity. The record and the objectives of the Sentencing Guidelines support Moon's position.

Section 2D1.4 of the Guidelines provides that if a defendant is convicted of a conspiracy "to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy ... had been completed." As a corollary, the Guidelines commentary provides that in calculating the base offense level on a drug conspiracy count where the defendant is convicted of a crime "involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount" involved in the conspiracy. United States Sentencing Commission, *Guidelines Manual,* § 2D1.4, Application Note 1. Section 2D1.4 and its commentary reflect the general policy of the Guidelines to promote "real offense" sentencing in narcotics cases. *Cf. United States v. Copeland,* 902 F.2d 1046, 1049 (2d Cir.1990).

Consideration of the Guidelines' concern for real offense sentencing has led in a number of cases to sentencing on the basis of quantities higher than the quantity of narcotics seized from the defendant, where a higher quantity was negotiated, *see, e.g., United States v. Adames,* 901 F.2d 11, 12 (2d Cir.1990) (offense level based on negotiation for defendant's purchase of 7.7 kilo-

grams of heroin, though only one kilogram actually transferred because undercover "sellers" delivered mostly placebo); *United States v. Vazzano*, 906 F.2d 879, 884 (2d Cir.1990) (upholding consideration of quantity of cocaine defendant offered during negotiations but did not actually deliver), or on the basis of quantities higher than those specified in the counts of conviction, where a greater quantity had been seized, *see, e.g., United States v. Bedoya*, 878 F.2d 73, 76 (2d Cir.1989) (per curiam); *United States v. Paulino*, 873 F.2d 23, 25 (2d Cir.1989) (per curiam); *United States v. Fernandez*, 877 F.2d 1138, 1142 (2d Cir. 1989), or on the basis of quantities higher than the amount specified in a plea of guilty, where the scheme involved a larger quantity, *see, e.g., United States v. Guerrero*, 863 F.2d 245, 247–50 (2d Cir. 1988); *see also United States v. Santiago*, 906 F.2d 867, 871–73 (2d Cir.1990) (upholding consideration of quantities sold as part of same course of dealing, but neither seized nor charged in indictment). The goal in such cases is to punish the defendant for amounts of narcotics which, though not actually transferred, were "part of the same course of conduct or common scheme or plan as the offense of conviction." Guidelines § 1B1.3(a)(2).

The usual question in such cases is whether quantities of narcotics other than those seized or admitted, the amounts seized and admitted having been proven to be a fraction of the total quantity in which the defendants sought to deal, were sufficiently proven to be part of the same course of conduct. In the present case, there is no question that Moon's dealings involving Labat, Ray, Dentel, and Mathews were the same course of conduct. Here the question is rather, given the one kilo that was delivered to Mathews, whether the kilogram Moon had sought to purchase from Labat was an "other" quantity. We think this question must be answered in the negative, for the evidence was that Moon agreed to buy one kilogram from Labat in order to sell that one kilogram to Mathews.

Though in early conversations with Labat, there was discussion of the possible availability and pricing of "one or two" kilos, the agreement Moon and Labat entered into, which formed the basis of the count 5 conspiracy charge, was for Labat to provide Moon with one kilo. Thus, the PSR stated that Moon had committed to the purchase of one kilogram of cocaine from Labat. The record supports the view that the kilogram of cocaine eventually obtained from Dentel was intended to be and was in lieu of, not in addition to, the kilo on which Moon had agreed with Labat. The evidence at Labat's trial was that in Moon's December 1987 discussion with Mathews, Moon told Mathews they could go to Florida to get a kilo from Labat, or that they could get a kilo from Ray "as an alternative." *United States v. Labat*, 905 F.2d at 20. At Moon's plea allocution hearing, the Assistant United States Attorney ("AUSA") described the count 5 conspiracy as one for "the sale of approximately one kilo of cocaine for the sum of $30,000 to the ... undercover officer." (Plea Hearing Transcript 11.) The AUSA stated that the government's proof, if it were to try Moon, would show conversations between Moon and Labat and Dentel indicating that they had discussed *"either* the possibility of providing *the* kilo of cocaine *or* in the case of Mr. Dentel of actually providing *the* kilo of cocaine." (*Id.* (emphasis added).) The PSR aptly characterized the government's offer of proof as showing that "Moon's deal to obtain a kilo of cocaine from Labat was never consumated [*sic*] *because*, through simultaneous negotiations with another supplier (Randy Dentel), Moon and Ray were able to arrange to buy cocaine at a better price." (PSR ¶ 18 (emphasis added).)

In sum, the present record indicates that Moon's conspiracy with Labat should not be viewed as an effort to obtain any cocaine other than that which Moon sought to sell to Mathews, or as a conspiracy different from his conspiracy with Ray to provide a kilogram of cocaine to Mathews, or as a conspiracy that did not achieve its end. The goal of the conspiracy was to obtain one kilo of cocaine to sell to Mathews; Moon shopped around for a good price; and the coconspirators chose the better

price and sold that one kilo. There was a completed distribution of the total amount that Moon had sought to purchase and that the coconspirators sought to sell.

We conclude that Moon's base offense level should have been calculated on the basis of one kilogram of cocaine, not two. Had the amount of cocaine in issue been calculated as one kilogram, Moon's base offense level would have been 26 instead of 28, and his sentencing range would have been not 78–97 months but 63–78 months.

■ The district court awarded Moon a substantial downward departure from the former range, and it is of course possible, as the government argues, that had the court known that its starting point should have been the latter range, it would nonetheless have arrived at a 48–month period of incarceration. Were we able to determine that this would have occurred, we would not entertain Moon's challenge to the sentence on this basis. *Cf. United States v. Bermingham*, 855 F.2d 925, 931 (2d Cir.1988). In fact, however, we have no way of knowing at what sentence the court would have arrived had it known that the prescribed range was 63–78 months instead of 78–97 months. In the circumstances, it is appropriate to vacate the judgment of conviction and remand for resentencing by the district court on the basis of correct information as to the proper Guidelines range. *See United States v. McCall*, 915 F.2d at 813–16 (remanding for resentencing where district court used an overly high sentencing range as the benchmark for determining how far down to depart); *United States v. Rich*, 900 F.2d 582, 586 (2d Cir. 1990) (remand appropriate where it was unclear from record whether district judge would have imposed same sentence under lower Guidelines range).

## C. *The Five–Year Minimum for Violation of § 846*

Prior to November 18, 1988, 21 U.S.C. § 841(b)(1)(B) provided a minimum five-year prison term for certain substantive offenses set forth in § 841(a); but there was no provision for a minimum sentence for conspiracy in violation of § 846. On

November 18, 1988, Congress amended § 846 to provide that the minimum prison term applicable to the substantive § 841(a) offenses would also apply to conspiracy in violation of § 846 to violate § 841(a). Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, Title VI, § 6470(a), 102 Stat. 4181, 4377 (1988).

■ The end dates of the conspiracies of which Moon was convicted were December 31, 1987, and March 30, 1988. The government concedes, properly, that since the amended penalty provision of § 846 became effective on November 18, 1988, it was not applicable in this case to Moon. The retroactive application of a law that imposes a mandatory minimum sentence in place of a flexible range of punishment would violate the *Ex Post Facto* Clause. *See, e.g., Miller v. Florida*, 482 U.S. 423, 429–35, 107 S.Ct. 2446, 2450–54, 96 L.Ed.2d 351 (1987); *United States v. Curry*, 902 F.2d 912, 917 (11th Cir.) (mandatory minimum sentence for violations of § 841(a)(1) does not apply to violations of § 846 which occurred prior to the Congressional amendment), *cert. denied,* —— U.S. ——, 111 S.Ct. 588, 112 L.Ed.2d 592 (1990).

■ The government argues that because the district court departed downward from the 60–month period of incarceration recommended by the Probation Department, the district court "obviously did not consider itself bound to impose a five year minimum" and Moon "cannot now be heard to complain." The supposition that the court did not believe the minimum five-year period applied is squarely contradicted by the record.

In discussing the sentence to be imposed on Moon, the court stated that it was "depart[ing] from the guidelines and impos[ing] a sentence below the guidelines in accordance with ... 18 United States Code 3553(E) on motion of the Government." (Sentencing Transcript 8.) Section 3553(e) deals only with downward departures below a minimum level established "by statute." 18 U.S.C. § 3553(e). Thus, the court's citation of § 3553(e) indicates that it believed the statutory minimum sentence provision was applicable. Undoubtedly this mistaken impression was fostered by the

plea agreement and the PSR, both of which indicated that Moon was subject to a minimum of five years' imprisonment.

We reject here, as in Part II.B. above, the government's argument that the court's misimpression should be disregarded in light of its substantial downward departure. Although we cannot be sure that the misinformation as to the applicability of the minimum sentence provision was a factor in the district court's sentencing decision, neither can we assume that the court would necessarily have imposed the same sentence if it had known that the five-year minimum did not apply to Moon. " '[O]ne is not barred from challenging a change in the penal code on *ex post facto* grounds simply because the sentence he received under the new law was not more onerous than that which he might have received under the old.' " *Miller v. Florida*, 482 U.S. at 432, 107 S.Ct. at 2452 (quoting *Dobbert v. Florida*, 432 U.S. 282, 300, 97 S.Ct. 2290, 2301–02, 53 L.Ed.2d 344 (1977)); *see Lindsey v. Washington*, 301 U.S. 397, 401–02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937).

## CONCLUSION

For the above reasons, we vacate the judgment of conviction and remand for resentencing in light of the foregoing. The mandate shall issue forthwith.