UNITED STATES of America, Appellee,

v.

Pablo OLVERA, Mauricio Juela and Alberto Olvera, Defendants–Appellants.

Nos. 583, 584 and 553, Dockets 91–1437, 91–1438 and 91–1476.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1991.

Decided Jan. 15, 1992.

Eric J. Greenbush, New York City (Michael Yuceuicius, of counsel), for defendant-appellant Pablo Olvera.

Noah Lipman, New York City, for defendant-appellant Mauricio Juela (taken on submission).

Cheryl J. Sturm, West Chester, Pa., for defendant-appellant Alberto Olvera.

Lawrence Byrne, New York City, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Daniel C. Richman, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG, NEWMAN and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

Alberto Olvera, Pablo Olvera and Mauricio Juela appeal from judgments of the United States District Court for the Southern District of New York, David N. Edelstein, J., convicting, after guilty pleas, all three of conspiracy to violate the narcotics laws and Pablo Olvera of unlawful possession of a weapon during a narcotics offense. The district court sentenced: Alberto Olvera to 168 months in prison to be followed by a life term of supervised release; and Pablo Olvera to 168 months in prison on the conspiracy count and a consecutive five-year prison term on the weapon possession count, to be followed by a life term of supervised release. The district court also ordered that the Olveras be deported upon serving their term of imprisonment. Mauricio Juela was sentenced to 144 months in prison to be followed by a five-year term of supervised release. Appellants raise various issues affecting their sentences. For the following reasons, we affirm the judgments of conviction.

## I. Background

The record before us discloses the following. In September 1989, a confidential informant working for the Drug Enforcement Administration purchased one-eighth of a kilogram of cocaine from Pablo and Alberto Olvera in a Manhattan apartment rented by the Olveras. During that transaction, Pablo Olvera held a loaded Uzi .45 caliber pistol. The informant also saw Alberto Olvera and Mauricio Juela packaging cocaine in the apartment at that time.

In October 1989, the informant went to the Olveras' apartment and saw Pablo Olvera arrive with a shopping bag containing approximately ten plastic bags of cocaine. Juela weighed the bags and secreted them throughout the apartment. At that time, Alberto Olvera agreed to sell the informant five kilograms of cocaine for $22,000 two days later. On that day, in separate taped telephone conversations, the informant spoke with Pablo and Alberto Olvera.

They told him to bring the money to the apartment and that they would then obtain the five kilograms of cocaine. Later that day, Juela and the Olveras were arrested together a short distance from the apartment. During a search of the apartment, agents found 546 grams of 87% pure cocaine, $6,000 in cash, two electronic scales, two bullet-proof vests, drug records, a .45 caliber Uzi pistol, a .38 caliber revolver and ammunition. Telephone bills reflecting calls from the apartment to Juela's residence in New Jersey were also found.

All three defendants pled guilty at the same hearing in the district court. Alberto Olvera pled guilty to conspiring to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(A), and Pablo Olvera and Mauricio Juela pled guilty to the lesser offense of conspiring to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(B). Alberto Olvera admitted at his plea allocution that he and his brother Pablo had agreed to supply five kilograms of cocaine to the confidential informant. Pablo Olvera admitted in his plea allocution that he had agreed to sell over 500 grams to the confidential informant and Juela admitted that he had conspired to sell 500 grams. Pablo Olvera also admitted that he had a .45 caliber pistol during the transaction "to protect [him]self and the drugs from being ripped off." While Pablo Olvera was incarcerated awaiting sentencing, he was caught smuggling approximately half an ounce of marijuana into prison.

In the presentence investigation reports, the Probation Department based its calculation of the defendants' base offense levels on, among other things, the five kilograms of cocaine that they had agreed to supply to the confidential informant on the day of their arrest. At sentencing, the defendants contended that they had not been reasonably capable of producing the five kilograms of cocaine and therefore their base offense level under the Sentencing Guidelines should reflect only the 546 grams seized in the apartment and the one-eighth of a kilogram purchased by the informant in September 1989. The district judge held a hearing to resolve defendants'

objections, at which the government presented several items of physical evidence that had been seized at the apartment. Defendants did not introduce any evidence at the hearing. Counsel for the government and defendants stipulated to the admission of the transcripts of all of the tape-recordings that the informant had made. The district court rejected Pablo Olvera's request that the confidential informant testify on the issue of the defendants' ability to produce five kilograms of cocaine.

Thereafter, in a written opinion, the judge found that the three defendants had been reasonably capable of producing five kilograms of cocaine and set their base offense level accordingly. He also found that defendants were not minor or minimal participants. The court enhanced by two levels the base offense level of Alberto Olvera and Mauricio Juela for possessing a weapon during the offense. Finally, the court found that Pablo Olvera had not accepted responsibility and was not entitled to a reduction on that ground. These appeals followed.

## II. Discussion

### A. Double counting

Pablo Olvera argues that the district court, by sentencing him to the maximum sentence within the guidelines range for conspiracy to distribute cocaine, impermissibly "double counted" his smuggling of marijuana into prison while incarcerated pending sentencing and his conviction for possession of a weapon. Judge Edelstein stated that he imposed the maximum sentence within the applicable guidelines range "because of the defendant's central role in arranging the drug transaction, his possession of a .45 caliber Uzi pistol during one narcotics transaction, and because of the defendant's continued criminal conduct which has not been deterred by incarceration." The "continued criminal conduct" presumably referred to Olvera's smuggling of marijuana into prison.

Olvera contends that Judge Edelstein had already considered the marijuana episode in denying him a two point reduction

for acceptance of responsibility under U.S.S.G. § 3E1.1 and had already accounted for possession of a weapon by imposing a five-year consecutive sentence for his conviction for possession of a weapon under 18 U.S.C. § 924(c)(1). Therefore, Olvera argues, the district court failed to provide adequate reasons for choosing a particular point within a guidelines range that is over 24 months, as required by 18 U.S.C. § 3553(c). Olvera relies on U.S.S.G. § 2K2.4, comment. (background), which provides: "To avoid double counting, when a sentence under this section [924(c)] is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for firearm discharge, use, or possession is not applied in respect to such underlying offense." In addition, Olvera argues that the provision in 18 U.S.C. § 3553(b) that a court may not make an upward departure based upon a factor adequately taken into account elsewhere in the Guidelines, see *United States v. Sanchez Solis*, 882 F.2d 693, 698–99 (2d Cir.1989), should apply to choosing a particular sentence within a guidelines range.

■ Olvera's arguments are without merit. The rules concerning upward departures, which the Guidelines specifically address, are irrelevant in determining what factors are properly considered in choosing a particular sentence *within* a range. As for U.S.S.G. § 2K2.4, the background commentary to that section applies only to offense characteristics that determine a sentencing range but not to the selection of a particular sentence within an applicable range. Thus, the commentary to § 2K2.4 precluded the district court from using Olvera's possession of a weapon to enhance the base offense level of his conspiracy conviction two levels under U.S.S.G. § 2D1.1(b)(1). See *United States v. Missick*, 875 F.2d 1294, 1301–02 n. 7 (7th Cir. 1989). In choosing a particular sentence within a range, however, a sentencing judge is free to use all relevant information concerning the defendant. See U.S.S.G. § 1B1.4. In effect, Olvera's argument presumes that a judge must start at the bottom of the applicable guideline range and go up using only factors not otherwise

considered. The guidelines contain no such presumption. We therefore find that Judge Edelstein did not impermissibly "double count" Olvera's possession of a weapon or his possession of marijuana.

Our holding should not be read as rejecting double-counting arguments in all circumstances in which the Sentencing Commission has not explicitly precluded it. There may be some instances in which double-counting is improper even though the Guidelines do not specifically address it. Olvera's case, however, is not among them.

### B. Quantity of cocaine

All three appellants argue that the district court committed error in finding that they were reasonably capable of delivering five kilograms of cocaine. We review Judge Edelstein's finding of fact under a clearly erroneous standard. See *United States v. Lanese*, 890 F.2d 1284, 1291 (2d Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). Citing *United States v. Moon*, 926 F.2d 204, 208 (2d Cir.1991), and U.S.S.G. § 2D1.4, comment. (n. 1), Alberto Olvera contends that he should be sentenced for his "real offense" behavior, by which he means the amount of narcotics he sold or possessed. However, as *Moon* points out, a number of courts have sentenced "on the basis of quantities higher than the quantity of narcotics seized from the defendant, where a higher quantity was negotiated." *Moon*, 926 F.2d at 208–09 (citing cases). In addition, Alberto Olvera admitted in his plea allocution that he conspired with Pablo Olvera to distribute five kilograms of cocaine. We recognize that the government is not required to establish quantity as an element of the offense, see *United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990), and sentencing judges must make their own determination as to quantity for the purposes of sentencing, see *United States v. Jacobo*, 934 F.2d 411, 416–17 (2d Cir.1991). Nevertheless, defendants' admissions at their plea allocutions can be considered by sentencing judges in making that determination.

■ Pablo Olvera and Mauricio Juela admitted to distributing only 500 grams of cocaine, but Judge Edelstein had other evidence on which to base his finding of five kilograms. In a letter to the Assistant United States Attorney, the three defendants explained that their drug "Boss" had been ready with five kilograms on the day of the deal but when the informant failed to show up with the money, the deal never went through. In addition, evidence seized at the apartment at the time of defendants' arrest, which included 87% pure cocaine, weapons, bullet-proof vests, electronic scales and other narcotics paraphernalia, showed that they were not low-level traffickers. See *United States v. Lopez*, 937 F.2d 716, 726 (2d Cir.1991). Moreover, Alberto and Pablo Olvera both made tape recorded statements in which they agreed to supply the confidential informant with five kilograms of cocaine. The district court could properly reject the Olveras' claims that they were only "puffing" when they made these statements and that the tapes prove they were not capable of producing five kilograms because they needed the money up front.

Judge Edelstein also had an adequate basis to reject Juela's claim that he could not have reasonably foreseen a multikilogram cocaine sale by his co-conspirators. In addition to the evidence previously noted, Juela conceded that he had been present in the Olveras' apartment and weighed drugs for the Olveras. Juela also admitted that he acted as a driver for Alberto and Pablo Olvera at the time of his arrest and during other drug transactions. Based on this evidence, we cannot say that Judge Edelstein's finding that appellants were reasonably capable of producing five kilograms of cocaine was clearly erroneous.

■ Pablo and Alberto Olvera contend that the district judge violated their right to due process at sentencing by denying their request to have the confidential informant testify at a *Fatico* hearing and by considering unreliable hearsay in determining relevant sentencing factors. The district court was not required under the due process clause or the Guidelines to hold a full-blown evidentiary hearing. See *United States v. Prescott*, 920 F.2d 139, 143–44 (2d Cir.1990). We have already held that "the procedure followed in resolving disputed factors at sentencing rests in the district court's sound discretion." Id., 920 F.2d at 144.[1]

■ The district court did not abuse its discretion by not allowing the confidential informant to testify regarding appellants' ability to produce five kilograms of cocaine. As discussed above, at the sentencing hearing the government produced the physical evidence seized at the Olveras' apartment as well as the recorded conversations between the confidential informant and the Olveras. Judge Edelstein pointed out that he had been presented with "some very objective evidence" as to the amount of cocaine appellants were reasonably capable of producing and, in effect, determined that there was no cause to believe that the informant had any relevant and competent testimony on the issue. In addition, appellants were given a full opportunity to argue their objections and to present any relevant evidence, and they submitted only assertions of counsel. Finally, contrary to the Olveras' assertion that the court relied on the informant's "unreliable hearsay," the tape recorded conversations contained the Olveras' own statements, which the court properly used in making its findings.

## C. Appellants' remaining contentions

■ We address appellants' remaining contentions only briefly. Pablo Olvera ar-

1. Citing *United States v. Silverman*, 945 F.2d 1337, 1343–46 (6th Cir.), vacated and withdrawn (Dec. 4, 1991), and *United States v. Fortier*, 911 F.2d 100, 103 (8th Cir.1990), Alberto Olvera raises for the first time in a reply brief the claim that the failure to produce the confidential informant was a violation of his rights under the Confrontation Clause. We note that there is presently a disagreement in the circuits on whether the Confrontation Clause applies to sentencing. See *United States v. Kikumura*, 918 F.2d 1084, 1102–1103 & n. 19 (3d Cir.1990) (holding Confrontation Clause does not apply at sentencing). In any event, the claim was not made to Judge Edelstein and to the extent that *Prescott* and *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir.1989), do not foreclose the issue, we will not consider it further.

gues that the district court erred in denying him a two-point reduction for acceptance of responsibility based on his guilty plea. The district court found that Pablo Olvera's smuggling of marijuana into prison indicated that he had not withdrawn from criminal conduct and was inconsistent with acceptance of responsibility. The court also found that Olvera had not been candid with the Probation Department in discussing the charges to which he pled guilty. Olvera contends that the small amount of marijuana that he smuggled suggests that he intended to use it only for personal use for his marijuana addiction, and that he should not be denied an acceptance of responsibility reduction due to his drug abuse. The Guidelines note that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility" and the judge's determination "is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5). This court has stated that "the fact that a defendant commits a second crime after pleading guilty and while awaiting sentencing for a first offense is a relevant consideration in denying the acceptance of responsibility adjustment." *United States v. Rodriguez*, 928 F.2d 65, 67 (2d Cir.1991). We find that the judge's denial of the reduction was not error.

Mauricio Juela argues that the district court erred by enhancing his sentence two levels for possession of a gun during the commission of narcotics offenses under U.S.S.G. § 2D1.1(b)(1). Juela contends that the court did not find that he had any connection to the apartment in which the guns were found other than his actual presence in the apartment. As U.S.S.G. § 2D1.1, comment. (n. 3), explains, however, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." See also *United States v. Pellegrini*, 929 F.2d 55, 56 (2d Cir.1991) (per curiam). There was sufficient evidence for the district court to find that Juela had substantial contact with the apartment and that the weapon was connected with the offense.

Juela also argues that the district court erred in refusing to allow him a two-point reduction for being a minor participant in the narcotics conspiracy, on the ground that his participation was less than that of his two co-defendants. Whether any mitigation adjustment is appropriate is "heavily dependent upon the facts of the particular case," U.S.S.G. § 3B1.2, comment. (background), and accordingly, a district court's judgment about a particular defendant's degree of participation will not be disturbed on appeal unless clearly erroneous. See *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir.1991). The district court found that Juela weighed narcotics and secreted them around the apartment. The court also found that Juela was present when the Olveras sold cocaine to the informant and when Alberto negotiated the five kilogram deal. In addition, Juela admitted to acting as a driver in various instances. Under the circumstances, we cannot say that Judge Edelstein's determination that Juela was not a minor participant was clearly erroneous.

Alberto and Pablo Olvera contend that the district court violated Fed. R.Crim.P. 11(c)(1) by failing to inform them that their maximum punishment could include court-ordered deportation. The Olveras concede that deportation ordinarily is a collateral consequence of a guilty plea and therefore not a basis for attack under Rule 11. See *United States v. Romero–Vilca*, 850 F.2d 177, 179 (3d Cir.1988); *United States v. Santelises*, 476 F.2d 787, 790 (2d Cir.1973). However, appellants argue that deportation is not a collateral consequence here because the district court ordered the deportation, as opposed to leaving the decision to the discretion of the Attorney General. The district court's deportation "order" was beyond its authority but the error was harmless because the court's order was not binding on the Attorney General, who has sole discretion to institute deportation proceedings against the Olveras. See 8 U.S.C. § 1251; *United States v. Montoya*, 891 F.2d 1273, 1293 n. 24 (7th Cir.1989). Thus, the district court's "order" constitutes only a recommendation

to deport and deportation is at most a collateral consequence of the Olveras' guilty pleas.

Finally, the Olveras argue that the judge's attempt to order them deported demonstrates the judge's bias. However, the judge simply made an error of law regarding his authority to order deportation and this error should not be equated with bias.

We have considered all of appellants' contentions and find them without merit. The judgments of conviction are affirmed.