**UNITED STATES of America, Plaintiff,**

v.

**Jose C. RODRIGUEZ, Jr.,
et al., Defendants.**

**No. 3:95CR772.**

United States District Court,
N.D. Ohio,
Western Division.

May 30, 1997.

Jose C. Rodriguez, Jr., Marion Correctional Institution, Marion, OH, pro se.

Mark C. Geudtner, Toledo, OH, Gerald A. Baker, Toledo, OH, for Jose C. Rodriguez, Jr.

Charles M. Boss, Boss & Vitou, Maumee, OH, for Richard Neller.

Richard Neller, Toledo, OH, pro se.

Colleen A. Kelley, Whitehouse, OH, pro se.

Jeffrey C. Zilba, Zilba & Dilabbio, Toledo, OH, Mark David Weinberg, Retske & Weinberg, Toledo, OH, for Colleen A. Kelly.

Gordon A. Senerius, Senerius & Eidy, Toledo, OH, for Jose C. Rodriguez, III.

Jose C. Rodriguez, III, Toledo, OH, pro se.

Vido Robert Candiello, Rubin, Candiello & Rubin, Toledo, OH, for Christina Rodriguez.

Christina Rodriguez, Toledo, OH, pro se.

Jeffrey James Helmick, Helmick, Jacobs & Solomon, Toledo, OH, for Henry R. Rios.

Henry R. Rios, Toledo, OH, pro se.

Linda J. Jennings, Toledo, OH, for Amparo O. Pecina.

Amparo O. Pecina, Oregon, OH, pro se.

Carol L. Damrauer, Toledo, OH, Spiros P. Cocoves, Toledo, OH, for Eloy P. Perez.

Eloy P. Perez, Toledo, OH, pro se.

Gregg D. Hickman, Law Offices of Gregg D. Hickman, Toledo, OH, Jeffrey D. Levy, Levy & O'Connell, Toledo, OH, for Jose Garza.

Jose Garza, Toledo, OH, pro se.

Joseph R. Wilson, Thomas O. Secor, Sr., Office of U.S. Attorney, Toledo, OH, for U.S.

## MEMORANDUM AND ORDER

JOHN W. POTTER, Senior District Judge.

This cause is before the Court on defendant Eloy Perez's written objections to the presentence report. A hearing was held on May 1, 1997 at which the Court heard arguments on the objections by counsel for defendant and the government and at which defendant was given the opportunity to present evidence in support of his position. The Court now makes its findings of fact and rulings with respect to the objections raised by defendant. A copy of these findings will be appended to the presentence report and will be made available to the Bureau of Prisons.

Initially, the Court finds that, at trial, the government failed to prove that the conspiracy involved distribution of cocaine base and all references to cocaine base were stricken. Therefore, such references in the summary of the allegations in the indictment contained in paragraphs one through nine of the presentence report shall not be used in any manner to defendant's detriment.

With respect to defendant's involvement in the conspiracy of which his step-father, Rodriguez, Jr., was the leader and organizer, the Court finds that he became a participant in the conspiracy at least as early as January, 1989. His participation continued until at least August, 1995. The Court further finds that the scope of defendant's jointly undertaken criminal activity included negotiating for large quantities of marijuana, traveling interstate to obtain cocaine and marijuana, and personally selling relatively small amounts of cocaine and marijuana.

The Court first addresses defendant's objections regarding the drug quantities attributed to him in the presentence report and makes its factual findings with respect to those drug quantities.

Paragraph 73 of the presentence report attributes 2.26 kilograms of marijuana (cocaine equivalent of 11.3 grams) to defendant. This amount is based upon Colleen Kelly's testimony that defendant sent her 5 pounds from Texas shortly after her release from prison in 1992. That transaction was arranged through defendant's stepfather, Jose Rodriguez, Jr. In objection 2(a)[1], defendant accepts the drug quantity set forth in paragraph 73 as true, subject to the Court's credibility determination of the testimony of Colleen Kelly. Ms. Kelly testified at trial over a period of three days. Her credibility was tested through extensive cross-examination. The Court has heard all of the testimony and finds her testimony with respect to defendant credible.

Paragraph 74 attributes 27.216 kilograms of marijuana (cocaine equivalent of 136 grams) to defendant based upon the testimony of co-conspirator Henry Rios that he made several trips to Texas with defendant in late 1993 to 1994, purchasing approximate-

---

1. Defendant's first objection is simply a statement regarding the Court's duty to assess the proposed factual findings contained in the presentence report.

ly 30–40 pounds each trip. The presentence report limited this to 2 trips. In objection 2(b), defendant accepts this amount as true subject to his contention that the Texas trips were unconnected to the charged conspiracy. Rios testified that, to his knowledge, the trips were for Perez and not for anyone else. However, there is no indication that Rios would know whether Perez was or was not acting in furtherance of the conspiracy. The trial testimony of other witnesses clearly indicates that the defendant was working for Rodriguez, Jr. during the relevant time period. *See e.g.* Trial Tr. 2324–27 (In 1994, defendant and Rodriguez, III, met with an undercover agent in Texas to discuss a drug deal at the request of Rodriguez, Jr.); *Id.* at 1485 (during the same time period, defendant and three other co-conspirators met in Texas with "Uncle Juan," a marijuana supplier for the conspiracy); *Id.* at 1939, 1948 (Rodriguez, Jr. introduced former cellmate Bailey to defendant after Bailey's release in 1995, at which time defendant sold him cocaine). The Court finds it more likely than not that the Texas trips were made in furtherance of the conspiracy. Thus, the Court finds defendant's objection not well taken.

▪ In objection 2(c), defendant contends that paragraph 75 incorrectly attributes to him 1.5 grams of cocaine (marijuana equivalent of .3 kg) sold by Rios on April 6, 1990. While the Court finds that the presentence report incorrectly states that Rios sold the cocaine on that date, it finds that the 1.5 grams is properly attributed to defendant. At trial, Detective Connor testified that on April 6, 1990 defendant and Rodriguez, III met with him at the home of Rodriguez, Jr. and directed him to another residence where the sale of 1.5 grams of cocaine was concluded. Trial Tr., p. 1636–37.

In objection 2(d), defendant accepts as true the amounts detailed in paragraphs 76 and 77. Thus, the Court finds that the 113.4 grams or .1134 kilograms of marijuana (cocaine equivalent of .567 grams) in paragraph 76 and 907 grams or .907 kilograms of marijuana (cocaine equivalent of 4.53 grams) in paragraph 77 are properly attributed to defendant.

The Court further finds that defendant supplied Charles Bailey, a former cellmate of Rodriguez, Jr., with 14 grams of cocaine (marijuana equivalent of 2.8 kg) after Bailey's release from prison and after being introduced through Rodriguez, Jr., as set forth in paragraph 78 of the presentence report. Although, in objection 2(e), defendant objects' generally to the reliability of Bailey's testimony, the Court finds his testimony credible. Defendant's objection is not well taken.

In objection 2(f), defendant objects to the 7 kilograms of cocaine and 30 pounds of marijuana discussed at a July 27, 1993 meeting with undercover agent Luna as set forth in paragraph 79 of the presentence report. He also objects to the inclusion of one kilogram of cocaine in paragraph 80. The evidence as it relates to those paragraphs was introduced through the testimony of agent Luna as follows. Defendants' father, Jose Rodriguez, Jr., who was in prison at the time, became acquainted with another inmate, Gene Vela. Vela, who acted as an informant for Luna, told Rodriguez, Jr. that he had a supplier in Texas. Subsequently, Rodriguez, Jr. was introduced to Luna, posing as the supplier, by telephone. Luna was told that Rodriguez was sending his sons to meet with him. On July 27, 1993, Perez and Rodriguez, III met with Luna in a motel in Kingsville, Texas. Rodriguez, III discussed purchasing 7–10 kilograms of cocaine from Luna and stated that their present cocaine supplier could not meet their demands. See Trial Tr., p. 2327; Tr. Sept, 13, 1996 hearing, p. 8, 25. Luna told him that the price of the cocaine was $13,000 per kilogram, and that the more they bought, the less the price. Trial Tr., p. 2328.

Perez was present but was not actively involved in the cocaine discussion. Perez did, however, discuss and expressed an interest in purchasing 30 pounds of marijuana. Luna told him he could supply the marijuana; however, no price was discussed; no deal was proposed; and no further contact regarding the marijuana was ever made. Trial Tr., p. 2327, 2351; Tr. Sept, 13, 1996 hearing, p. 25–26. The July 27 meeting concluded with Luna giving Rodriguez, III a telephone num-

ber where he could be reached. Trial Tr., p. 2329.

Nearly one month later, on August 30, Rodriguez, III contacted Luna by telephone. He told Luna that he was interested in purchasing one kilogram of cocaine but that he had only $10,000 to make the purchase. Although Luna told him that was not enough, he agreed to meet with defendants for the limited purpose of having the sheriff's department stop defendants' car and seize the cash. Approximately $3,600 was seized from Perez and $6,600 from Rodriguez, III. Defendants were not, however, arrested at that time. Trial Tr., p. 2329–31.

The following day, Rodriguez, Jr. called and talked to Luna. He was unaware of Luna's involvement in the seizure the previous day. During the conversation, Luna told Rodriguez that his sons wanted 10 kilograms of cocaine but wanted to purchase one at a time. Rodriguez responded that "he felt better doing that, just one at a time." Trial Tr., p. 2334. Rodriguez then told Luna to contact him "when he felt better, because things were heated up" due to the seizure the previous day and that "we could do something" at a later date. Trial Tr., p. 2334–35. Luna had no further conversation or dealings with Rodriguez.

Defendant contends that he was a mere bystander with respect to the cocaine discussion between Luna and Rodriguez, III. Apparently, defendant is arguing that any cocaine transaction was not within the scope of his agreement in the conspiracy. However, defendant was not only present during the July 27 discussion, but he accompanied Rodriguez, III on the August 30 attempt to purchase cocaine, carrying approximately $3,600 of the $10,000 intended for the purchase. The Court, therefore, rejects this argument.

Defendant further contends that U.S.S.G. 2D1.1, Application Note 12, permits consideration only of agreed-upon quantities of drugs in determining the base offense level and that no agreement to purchase 7 kilograms of cocaine or 30 pounds of marijuana was ever reached. The government, also relying on Note 12, argues that the quantity under negotiation in a reverse sting should be considered and that no agreement is required.

Application Note 12 was amended, effective November 1, 1995, and provides in relevant part as follows:

> In an offense involving an *agreement* to sell a controlled substance, the *agreed-upon* quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. ... In contrast, in a reverse sting, the *agreed-upon* quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant. If, however, the defendant establishes that he or she did not intend to provide, *or* was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

(Emphasis added.)

Prior to the 1995 amendment, Note 12 provided that "the weight *under negotiation* in an uncompleted distribution shall be used to calculate the applicable amount," unless "the court finds that the defendant did not intend to produce and was not reasonably capable of producing the *negotiated* amount. ..." (Emphasis added.)

The government points to the Sentencing Commission's comment regarding the 1995 amendment in support of its position that amounts "under negotiation" may be considered. The Sentencing Commission states that

> This amendment revises the Commentary to § 2D1.1 to provide that in a case involving negotiation for a quantity of a controlled substance, the *negotiated quantity* is used to determine the offense level unless the completed transaction establishes a different quantity, or the defendant establishes that he or she was not reasonably capable of producing the negotiated

amount or otherwise did not intend to produce that amount.

U.S.S.G., Appendix C, p. 424 (emphasis added).

The Court notes, however, that the plain language of the relevant amended version of Note 12 refers to use of the "agreed-upon" quantity. The Court does not find the Sentencing Commission's comment to the amendment, wherein it refers to use of the "negotiated quantity," irreconcilable with the amendment's reference to "agreed-upon" quantities. The negotiated quantity simply refers to that amount agreed upon as a result of the negotiation. To also include amounts merely "under negotiation" would render the "agreed-upon" language of the amendment meaningless. Cases cited by the government do not compel a contrary reading of the amendment. All of the cases applied Note 12 prior to its amendment. In three of the four cases cited by the government, the court found that the defendant agreed to purchase or distribute the amount referred to in discussions. *See United States v. Nichols*, 979 F.2d 402, 404, 414 (6th Cir.1992) (defendant agreed to purchase and clearly intended to purchase 5 kilograms of cocaine); *United States v. Davern*, 970 F.2d 1490, 1491, 1493 (500 kilograms of cocaine that defendant agreed to and attempted to purchase properly counted, although agent actually transferred only 85 kilograms); *United States v. Gonzales*, 929 F.2d 213, 214, 216 (6th Cir. 1991) (500 grams of cocaine which defendant had arranged to sell was properly counted, although defendant had returned with only 300 grams to consummate the deal); *see also United States v. Moon*, 926 F.2d 204, 208–10 (2d Cir.1991) (conversations early in the negotiations concerning "one or two" kilograms not sufficient to sustain district court's sentence based on two kilograms, where the evidence revealed that the total amount the buyer actually sought to and did purchase was one kilogram). The fourth case is distinguishable in that it involved a defendant's statement to a co-conspirator that he had a 500 kilogram shipment of cocaine awaiting delivery. *United States v. Medina*, 992 F.2d 573, 589 (6th Cir.1993). The issue resolved was whether the defendant had the intent and the capability to deliver on his statement regarding a large cocaine shipment. *Id.* at 590.

■ Nevertheless, while the Court finds that only the agreed upon quantities may be considered, only defendant's agreement need be shown. Obviously, in a reverse sting, no meeting of the minds will occur as the government agent generally does not intend to deliver large amounts of drugs to the person with whom he is dealing. Thus, the Court's inquiry must focus on what defendant and Rodriguez, III agreed to during the course of the conversation with Luna. After making that determination, the Court must determine whether defendants have established that they, in fact, did not intend to purchase or were not reasonably capable of purchasing the agreed-upon quantity. U.S.S.G. § 2D1.1, Application Note 12 (1995).

Although Luna testified that 7–10 kilograms of cocaine and 30 pounds of marijuana were discussed at the July 27, 1993 meeting and that Rodriguez, III stated that their suppliers could not keep up with their cocaine demand, he testified to no discussion of a further meeting to consummate the deal nor did he indicate that defendants agreed to purchase either 7 kilograms of cocaine or the 30 pounds of marijuana from him. The Court finds that the July 27 meeting consisted of preliminary discussions only. With respect to the marijuana conversation, Luna testified that no price was even discussed. Although Rodriguez, III stated at that meeting that his suppliers could not keep up with their cocaine demand, the fact that there is no evidence or witness testimony indicating that the conspiracy involved any sales of cocaine' during that time period leads this Court to believe that defendant's statement was mere puffery. Moreover, more than one month elapsed before Rodriguez, III contacted Luna again. At that time, defendants wanted to purchase only one kilogram of cocaine but, in fact, possessed only $10,000 of the $13,000 they had been told was the selling price. After the $10,000 seizure, no further contact was ever made with Luna for additional drug purchases.

■ Nevertheless, the government directs the Court's attention to the September 1

conversation between Luna and Rodriguez, Jr., arguing that defendant intended to purchase 7 kilograms, but intended to do so one kilogram at a time. Luna testified that he told Rodriguez, Jr. that his sons wanted 10 kilograms but wanted to purchase them one at a time. However, he did not testify that defendant or Rodriguez, III actually made that request to him. Thus, it is unclear whether that conclusion was drawn by Luna as a result of the August 30 contact to purchase one kilogram or whether there was an actual agreement to purchase 7 kilograms, one at a time. Rodriguez, Jr.'s statement that it is better to purchase one at a time is hardly dispositive of the issue. The Court finds that the government has failed to prove, by a preponderance of the evidence, that defendant agreed to or even intended to purchase 7 kilograms of cocaine or 30 pounds of marijuana, and these amounts will not be considered by the Court.

■ Furthermore, the Court finds that defendant did not have the ability to purchase even one kilogram of cocaine at the proposed August 30 meeting, as only slightly over $10,-000 was seized during the investigative stop. Application Note 12 instructs that where a defendant is not reasonably capable of purchasing the agreed upon quantity, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he was not capable of purchasing. It is irrelevant that defendant and Rodriguez, III expressed a desire to purchase one kilogram where they did not have enough money to do so. *See United States v. Robinson,* 22 F.3d 195, 196–97 (8th Cir.1994). As stated in *Robinson:*

> Had the government agents been actual drug sellers or had circumstances unfolded differently, the negotiations may well have proceeded to a point where the sellers agreed to transfer two kilograms for less than the originally negotiated price. That did not happen here, however, and we are left with the inescapable conclusion that [defendant] only had the means to buy some quantity of cocaine less than two kilograms.

*Id.* at 196–97. The Court concludes that .77 kilograms or 770 grams of cocaine (marijuana equivalent of 1–54 kg) is the amount of cocaine defendants were capable of purchasing and is the proper amount attributable to defendants as a result of their contact with agent Luna.

The specific quantities of drugs noted in the above findings that result from conduct in which defendant personally participated in furtherance of the conspiracy total a marijuana equivalent of 187.59 kilograms or a cocaine equivalent of 937.89 grams.

Next, the Court addresses defendant's remaining objections. In objection 5[2] and in defendant's supplemental response to § 851 information, defendant contends that use of the prior felony drug convictions set forth in paragraphs 101 and 102 of the presentence report to enhance his sentence under 21 U.S.C. §§ 841 and 851(a) is improper. Defendant presents several arguments in support of his contention. First, defendant raises a constitutional challenge to the prior convictions arguing that he received ineffective assistance of counsel. The procedures for establishing prior convictions for purposes of sentence enhancement are set forth in 21 U.S.C. § 851. That statute requires the government to file an information stating the previous convictions to be relied upon. 21 U.S.C. § 851(a). A person claiming that any conviction alleged is invalid must then file a written response to the information setting forth the factual bases for the constitutional challenge. The defendant bears the burden of proof by a preponderance of the evidence on any issue of fact raised in his response. 21 U.S.C. § 851(c). However, no person may challenge the validity of any conviction which occurred more than five years before the date of the information alleging the prior conviction. 21 U.S.C. § 851(e).

■ The government filed the information required by § 851(a) on March 26, 1996, setting forth a January 21, 1989 felony conviction for attempted trafficking in marijuana and a June 27, 1990 felony conviction for

---

**2.** There are no objections numbered 3 or 4.

trafficking in marijuana. Both of these prior convictions occurred more than five years before the date that the information was filed. Thus, the Court concludes that § 851(e) bars defendant's challenge to his 1989 and 1990 convictions. *See United States v. Jenkins,* 4 F.3d 1338, 1343 (6th Cir.1993) (§ 851(e) bars defendants ineffective assistance of counsel challenge to his prior conviction).

Although defendant cites *Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), for the proposition that the five year limitation period does not apply to challenges where defendant claims ineffective assistance of counsel, this Court does not agree. In *Custis,* the defendant challenged prior state convictions on which the government relied for sentence enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e),[3] on the ground of ineffective assistance of counsel. The Supreme Court affirmed the lower court's holding that it could not entertain such a challenge since § 924(e) provides no statutory right to do so. The Court held that Congress could totally eliminate collateral attacks on prior convictions with regard to sentence enhancement if it chose to do so, except in the limited circumstance in which no counsel had been appointed. *Custis,* 511 U.S. at 493, 496, 114 S.Ct. at 1736–37, 1738–39. Offering § 851(c) as an example, it stated that "when Congress intended to authorize collateral attacks on prior convictions at the time of sentencing, it knew how to do so." *Id.* at 492, 114 S.Ct. at 1736. The Court further stated that claims of ineffective assistance of counsel and that defendant's guilty plea was not knowing and intelligent did not rise "to the level of a jurisdictional defect resulting from the failure to appoint counsel at all." *Id.* at 496, 114 S.Ct. at 1738. While *Custis* involved a review of 18 U.S.C. § 924(e) rather than the drug enhancement provisions of 21 U.S.C. § 851, the Supreme Court's reasoning supports rather than contradicts the Sixth Circuit's holding in *Jenkins.*

The second basis for defendant's objection to the use of his prior state convictions for enhancement purposes relies on the Second Circuit's interpretation of § 851(a)(2) which sets forth conditions that must be satisfied before the government can file a prior felony information with the Court. That section provides as follows:

An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

In *United States v. Collado,* 106 F.3d 1097 (2d Cir.1997), the defendant had prior felony drug convictions under the laws of Puerto Rico which do not provide for indictment by a grand jury. Because he was not prosecuted by indictment or waiver thereof, he argued that § 851(a)(2) barred the filing of a prior felony information. The Second Circuit found that the phrase "the offense for which such increased punishment may be imposed" was ambiguous and could refer to either the instant offense or the offense of prior conviction. *Collado,* 106 F.3d at 1100; *but see United States v. Espinosa,* 827 F.2d 604 (9th Cir.1987) (holding the statutory language refers to the instant offense); *United States v. Adams,* 914 F.2d 1404 (10th Cir.), *cert. denied* 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990) (same); *United States v. Burrell,* 963 F.2d 976 (7th Cir.), *cert. denied* 506 U.S. 928, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). Following the rule of lenity, the court found that the defendant's sentence should not be enhanced.

In the case sub judice, defendant argues that, under the reasoning of *Collado,* his prior state convictions may not be used to enhance his sentence since they were not punishable by a term of imprisonment in excess of three years. However, this Court does not find *Collado* persuasive. The phrase "imprisonment for a term in excess of three years" found in § 851(a)(2) clearly re-

---

**3.** Section 924(e) provides for enhancement of the sentence of a convicted firearms possessor who "has three previous convictions … for a violent felony or a serious drug offense." 18 U.S.C. § 924(e).

fers to the increased punishment applicable to the instant offense referred to in § 851(a)(1).

■ In objection 6, defendant objects to any use of relevant conduct information as well as informant testimony utilized by the Court in rendering sentence unless he has the right to cross-examine the individual. However, information regarding relevant conduct upon which this Court relies in sentencing defendant consists of trial testimony of government witnesses. Defendant had the opportunity to confront and cross-examine each of these witnesses at that time. The fact that these witnesses were not recalled by the government at the hearing on objections is not a basis for objection. *See* U.S.S.G. § 6A1.3, Commentary (reliable hearsay evidence may be considered); *United States v. Silverman,* 976 F.2d 1502, 1504 (6th Cir.1992). In any event, defendant had the opportunity to call witnesses at the hearing if he so desired. This objection is not well taken.

■ In objection 7, defendant objects to a two point enhancement for obstruction of justice based upon events set forth in paragraphs 84–85 of the presentence report. Those paragraphs report the statement of co-defendant Amparo Pecina that defendant telephoned her on December 25, 1996 and told her to contact counsel for Rodriguez, Jr., and tell them everything that occurred during any conference which she had with the government attorneys prior to trial and to also tell them she lied. Sentencing Guidelines § 3C1.1 provides that the offense level be increased by two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense ..." The Commentary to that section includes a non-exhaustive list of examples of the types of conduct to which this enhancement applies and includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, ... or attempting to do so." U.S.S.G. § 3C1.1, Application Note 3(a). Although Pecina stated that no threats or promises were made by defendant, the Court finds that defendant's call was an attempt to

pressure Pecina into recanting her trial testimony. Such an attempt to influence a co-defendant and witness warrants a two level enhancement for obstruction of justice.

■ In objection 8, defendant contends that his offense level should be reduced by four levels to reflect a mitigating role as a minimal participant pursuant to U.S.S.G. § 3B1.2. At a minimum, defendant argues that his involvement warrants a three level reduction as a case falling between minimal and minor participation. However, the Court does not agree. Such a reduction is not available to one who negotiates with the primary supplier of marijuana for the conspiracy, as defendant did with Juan Gonzalez. Trial Tr., p. 423–24.

■ In objection 9, defendant requests a downward departure pursuant to U.S.S.G. § 4A1.3. However, the Court finds that defendant's criminal history does not over-represent the seriousness of his criminal history or the likelihood that he will commit further crimes. Thus, a downward departure is not warranted.

■ In objection 10, defendant presents a constitutional challenge to the Sentencing Reform Act, arguing that the Act violates the separation of powers clause and equal protection. This argument has no merit. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (depriving courts of unlimited discretion in sentencing does not violate principles of separation of powers); *United States v. Lloyd,* 10 F.3d 1197 (6th Cir.1993) (Sentencing Guidelines do not violate equal protection).

In objection 11, defendant argues that use of prior convictions that were the basis of overt acts in the conspiracy charge for purposes of sentence enhancement is improper. In *United States v. Hughes,* 924 F.2d 1354, 1361–62 (6th Cir.1991), this issue was addressed. The Sixth Circuit concluded that the defendant's conviction for possession of cocaine and his subsequent conviction for conspiracy did not represent a single criminal episode. Thus, the court found that defendant's prior conviction for possession was properly used for purposes of sentence en-

hancement. On the authority of *Hughes,* the Court finds defendant's objection not well taken.

In objection 12, defendant argues that use of his prior state conviction for attempted trafficking in marijuana is improper for enhancement purposes. Defendant argues that this is not a substantive offense, but rather an attempt at a substantive offense. However, the enhancement provisions of § 841 apply where a prior conviction for a felony drug offense has become final. Attempted trafficking in marijuana is a felony drug offense, regardless of whether it is a substantive offense or not. It may, therefore, be considered under the enhancement provisions.

Finally, in objection 13, defendant requests a downward departure to compensate him for time spent in state custody for his two prior convictions that were the basis of overt acts in the indictment or that the Court credit him with the time spent in state custody while serving his state sentences. The Court finds this request not well taken.

As noted above, the specific quantities of drugs in the Court's findings total a marijuana equivalent of 187.59 kilograms or a cocaine equivalent of 937.89 grams, thus warranting a base offense level of 26. The Court also finds that a two point enhancement for obstruction of justice is warranted, resulting in a total offense level of 28. Defendant has five criminal history points which corresponds to Criminal History Category III. Pursuant to the Sentencing Guidelines, defendant's guideline range would be 97–121 months. However, section 5G1.1 of the Sentencing Guidelines provides that "the sentence may be imposed at any point within the applicable guideline range, provided that the sentence ... is not less than any statutorily required minimum sentence." Section 841(b)(1)(B) of 21 U.S.C. imposes a mandatory minimum sentence of 10 years in cases in which a prior conviction for a felony drug offense has become final, as *in* the case sub judice.

IT IS SO ORDERED.