104 F.3d 351
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Issac ROZIC, also known as Romulo, Defendant-Appellant.
 No. 96-1192.
 United States Court of Appeals, Second Circuit.
 Oct. 30, 1996.
 
 Issac Rozic appeals from a judgment of conviction entered after a plea of guilty on March 15, 1996, in the United States District Court for the Southern District of New York (Keenan, J.), for conspiring to import 756 kilograms of cocaine into the United States, in violation of 21 U.S.C. § 963.
 
 
 1
 S.D.N.Y.
 
 
 2
 AFFIRMED.
 
 
 3
 RICHARD A. CANTON, Canton & Jasper, New York, NY.
 
 
 4
 PAUL A. ENGELMAYER, Assistant United States Attorney, Southern District of New York, New York, NY.
 
 
 5
 Present: MESKILL, CALABRESI, Circuit Judges, BLOCK, District Judge.*
 
 ORDER
 
 6
 In July 1994, a confidential Drug Enforcement Administration ("DEA") informant (the "Informant") met with Antonio Mota-Graca ("Mota") and Clovis Antonio Catafesta Armiliato ("Armiliato") in Columbia. The Informant told the men that he was in the business of transporting cocaine from Paraguay to the United States. Mota agreed to use the Informant's business to ship a large quantity of cocaine, and instructed Armiliato to accompany the Informant back to Paraguay in order to plan the illegal shipment. On or about September 10, 1994, undercover DEA agents took possession of 756 kilograms of cocaine shipped by Mota at an airstrip in Paraguay. Shortly thereafter, a DEA agent in New York, posing as a representative of the Informant's smuggling business, spoke by telephone with Antenor Gomez-Carrillo ("Gomez"), an associate of Mota's and Armiliato's. Gomez informed the agent that a man named "Jorge" had been sent to New York to handle the transfer of the cocaine. Later that day, defendant Rozic, using the alias "Romulo," telephoned the agent on behalf of "Jorge" to set up a meeting. At that meeting, the agent instructed Rozic and his accomplice, Jose Manuel Restrepo Ruiz,[1] to provide a van to transport the cocaine. On October 3, 1994, Rozic and Ruiz parked a van in a parking garage and met an undercover DEA agent at a Manhattan restaurant. Upon handing the parking garage receipt to the agent, Rozic and Ruiz were arrested. Armiliato was arrested in Paraguay several days later and was extradited to the United States. Mota and Gomez remain at large.
 
 
 7
 Rozic, Ruiz, and Armiliato were indicted on one count of conspiring to import cocaine in violation of 21 U.S.C. § 963. Rozic and Ruiz were also indicted on a second count of conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. All three defendants pleaded guilty to the first count of the indictment.
 
 
 8
 Rozic raises two arguments on appeal. We reject both of them.
 
 
 9
 Rozic first argues that he should have been given a sentence reduction as a "minor participant" in the conspiracy pursuant to U.S.S.G. § 3B1.2(b). We review a district court's conclusion that a mitigation adjustment for minor participation was not warranted for clear error. United States v. Olvera, 954 F.2d 788, 793 (2d Cir.), cert. denied, 505 U.S. 1211 (1992).
 
 
 10
 The entire thrust of Rozic's argument is that his role in the conspiracy was less significant than that of his co-defendant Armiliato, who received a "minor participant" reduction, and that Rozic should therefore have received such a reduction as well. In fact, Armiliato's role was not nearly so significant as Rozic suggests, and Rozic's role was far more substantial than he would have this court believe. But in any event, the "fact that [Rozic] played a minor role in his offense vis-a-vis the role of his co-conspirators is insufficient, in and of itself, to justify a two level reduction; [Rozic] must have similarly played a minor role in comparison to the average participant in such a drug crime." United States v. Ajmal, 67 F.3d 12, 18 (2d Cir.1995) (internal quotation marks omitted); see also United States v. Pena, 33 F.3d 2, 3 (2d Cir.1994) ("[T]he Sentencing Commission intends for culpability to be gauged relative to the elements of the offense of conviction, not simply relative to co-perpetrators."). "The intent of the Guidelines is not to 'reward' a guilty defendant with an adjustment merely because his co-conspirators were even more culpable." United States v. Lopez, 937 F.2d 716, 728 (2d Cir.1991).
 
 
 11
 Thus, even if Rozic had played a minor role in the conspiracy compared to the role played by his co-defendant, he would still not be entitled to a "minor participant" reduction on that account. Rozic would only be entitled to such a reduction if his role was minor in comparison to the role of the average participant in a conspiracy to import illegal drugs. Ajmal, 67 F.3d at 18. Rozic contacted and met with the undercover DEA agent who was posing as a smuggler; he obtained a van to transport the drugs; he rented a house which, at the time that it was searched, contained three traps designed to hide the cocaine; and he arranged with the undercover agent to have the cocaine placed in the van. This conduct was certainly no less substantial than that of the average participant in a conspiracy to import cocaine. See, e.g., Olvera, 954 F.2d at 793 (upholding refusal to grant reduction where defendant weighed and stored drugs, drove the transportation vehicle, and was present while others negotiated the deal). Rozic's argument must therefore fail.
 
 
 12
 Rozic's second contention is that he was improperly denied the right to view the prosecution's notes from Armiliato's proffer session. Rozic argues that these notes could establish that Armiliato's role in the conspiracy was more significant than Rozic's, thus proving that Rozic was a minor participant entitled to a reduction under U.S.S.G. § 3B1.2(b). On that basis, Rozic maintains that the prosecution had a duty under Brady v. Maryland, 373 U.S. 83, 87 (1963), to disclose the notes to the defense.
 
 
 13
 This contention is meritless. Since proving the relative culpability of Armiliato would not establish that Rozic was entitled to the minor participant reduction, it follows that the notes were not Brady material. See Brady, 373 U.S. at 87 (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment") (emphasis added).
 
 
 14
 In an abundance of caution, Judge Keenan conducted an in camera inspection of the proffer notes to make certain that they did not contain any information favorable to Rozic's defense. He concluded that there was nothing in the notes "that would affect the sentence of Mr. Rozic in any manner, shape or form or in any way implicate[ ] ... the Brady rule." Rozic now contends that it was a denial of due process for the judge to have viewed the documents without Rozic's attorney present.
 
 
 15
 Since Rozic failed to object to the inspection in the district court, we review for plain error. Fed.R.Crim.P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). In fact, the judge's actions were not error at all, let alone plain error. Rozic's suggestion that a defendant is denied his right to due process of law when his attorney is not present at an in camera review of potential Brady material completely subverts the purpose of the in camera review:
 
 
 16
 A defendant's Brady request for discovery of exculpatory materials ... does not give the defendant the right ... to assess materiality himself. To the extent that there is a question as to the relevance or materiality of a given group of documents, the documents are normally submitted to the court for in camera review. Such review preserves the confidentiality of those documents that the court determines need not be disclosed to the defendant.
 
 
 17
 United States v. Wolfson, 55 F.3d 58, 60 (2d Cir.), cert. denied, 116 S.Ct. 521 (1995); see also United States v. Leung, 40 F.3d 577, 583 (2d Cir.1994) (the "purpose of in camera inspection of Government files in the context of protecting a defendant's Brady rights" is "not to provide a general discovery device for the defense; criminal defendants have no constitutional right to know the contents of Government files in order to present arguments in favor of disclosure").
 
 
 18
 We have examined all of Rozic's contentions, and find them to be without merit. The district court's judgment is therefore affirmed.
 
 
 
 *
 The Honorable Frederic Block, District Judge of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 Rozic told the undercover agent that Ruiz was "Jorge." In his proffer session, however, Rozic confessed that Ruiz was not "Jorge," the purported supervisor from Columbia, but was actually a minor figure whose role was to assist Rozic