UNITED STATES of America,
Plaintiff/Appellee,

v.

Jesse L. ADAMS, Defendant/Appellant,

and

UNITED STATES of America,
Plaintiff/Appellee,

v.

Kevin ELIGA, Defendant/Appellee.

Nos. 89–1195, 89–1201.

United States Court of Appeals,
Tenth Circuit.

Sept. 18, 1990.

Michael G. Katz and Mark D. Eibert, Public Defenders, Denver, Colo., for defendant-appellant Jesse L. Adams, submitted on the briefs.

Glen R. Anstine, Denver, Colo., for defendant-appellee Kevin Eliga.

Michael J. Norton, Acting U.S. Atty., Denver, Colo., for plaintiff-appellee.

Before McKAY and MOORE, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

These consolidated appeals attack the judgments of conviction and sentences of the District Court for the District of Colo-

rado [1] in the cases of two separately tried defendants for possessing with intent to distribute (or aiding and abetting such possession) more than 50 grams of crack cocaine in violation of 21 U.S.C. 841(a)(1), and 841(b)(1)(A)(iii), along with 18 U.S.C. 2, the aiding and abetting statute. The facts are the same in both cases, but somewhat different legal issues are raised. The appeals will be dealt with separately.

### Facts

One George Robinson, Jr., himself a major drug dealer under indictment on marijuana charges, undertook to "set up" a "big deal" with appellant (in 89–1195) Jesse L. Adams and appellant (in 89–1201) Kevin Eliga, in exchange for leniency in his own case. Robinson persuaded Adams (a "crack" addict) to introduce him to Eliga, the supplier used by Adams. Robinson arranged to buy a large amount of crack from Eliga. With money furnished by a police officer he rented two rooms at a motel, which were kept under surveillance. Room 221 was rented in Robinson's name. Police thoroughly searched Robinson and his room, and found no drugs, money, or other contraband. Robinson admitted Adams and Eliga when they arrived. Eliga opened a small leather pouch from which he took several small bags of "crack" which he placed on a table. Robinson scrutinized the drugs and told appellants he would bring his buyer. When he left the room officers entered, observed the "crack", arrested Adams and Eliga, searched the room and seized drugs and money. Adams stated that he was there for the money, but refused to state how much money he would have received as his share of the proceeds of the sale. Eliga's share, according to Eliga, was $5,000. After making bond, Eliga absconded but was later captured in California. Hence the two appellants were tried separately but were sentenced together.

---

* The Honorable Edward Dumbauld, Senior United States District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. The Honorable Sherman G. Finesilver, Chief Judge.

*Adams appeal, No. 89–1195*

Adams first argues that the prosecution violated the requirements of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), regarding production of evidence favorable to defendant which is material either to guilt or punishment. Evidence is material if there is a reasonable likelihood that it might have affected the outcome of the trial. *U.S. v. Bagley,* 473 U.S. 667, 674–75, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985), and includes evidence usable for impeachment of the Government's witnesses. (*Ibid.,* 676, 105 S.Ct. at 3380) *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). See also *Giglio v. U.S.,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); and *Chaney v. Brown,* 730 F.2d 1334, 1339 (10th Cir.1984).

Adams asserts that certain material relating to Robinson's previous activities as an informant for Denver and Colorado Springs police was not timely provided. The District Court, however, adjourned two hours early so that defense counsel might review the material before cross-examination of Robinson the next morning. It is not uncommon for lawyers during trial to be required to spend late hours preparing for the next day's tasks. Counsel in fact cross-examined Robinson extensively and also police officers from Denver and Colorado Springs. At least four witnesses were called by defendant to attack Robinson's credibility. The discrepancies developed related to Robinson's own criminal activities or his activities as an informant in other cases. There was nothing developed which contradicted or weakened his testimony about his activities pertinent to the present case regarding his arranging the rendezvous at the motel. Robinson left Room 221 in the motel before the officers entered, and his testimony regarding the actual drug deal he was orchestrating to obtain leniency for himself was corroborated by other witnesses, and was not material to the proof of the defendant's guilt.

The officers found and observed the defendants with the packages of "crack" in the motel room, and seized the contraband.

The guilt of appellants was abundantly demonstrated without need to rely on anything Robinson said. His part in the deal was merely that of a broker or catalyst. He persuaded Adams to introduce him to Eliga, and scheduled the meeting at the motel where the drugs were brought in and displayed to Robinson before Robinson made his exit and signaled the police officers to move in.

The jury undoubtedly recognized Robinson as a self-serving smooth-talking "con" artist, whose testimony was unimportant to the jury's determination of appellants' guilt.

Adams next argues that it was error to impose a minimum mandatory sentence of twenty years by virtue of enhancement of his sentence pursuant to 21 U.S.C. 851(b).

It is there enacted that:

(a)(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. . . .

(2) An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

The government duly filed an information based on a prior State felony conviction for possession of diazepan (valium). The District Court ruled that a mandatory twenty year sentence should be imposed.

This ruling was correct. Adams violated 21 U.S.C. 841(a), and under 21 U.S.C. 841(b)(1)(A)(iii) (involving 50 grams or more of a substance with cocaine base) the sentence "may not be less than 10 years." But the provision goes on to say that "If

any person commits a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than twenty years."

Adams reasons that his prior State offense can not be used to double his term of imprisonment because in that prior State conviction he was neither indicted nor waived indictment (for Colorado law does not utilize the time-honored practice of indictment by a grand jury). Therefore, he contends, 21 U.S.C. 851(a) prohibits his punishment from being increased by reason of his prior State conviction.

The District Court properly held that § 851(a)(2) when speaking of waiving or being afforded prosecution by indictment "for the offense for which such increased punishment may be imposed" refers to the offense being prosecuted in the case at bar, where Adams was duly indicted in accordance with federal criminal procedure.

The reasons why the interpretation advocated by the government and adopted by the District Court is correct are clearly set forth in *U.S. v. Espinosa*, 827 F.2d 604, 617 (9th Cir.1987), with which we fully agree.

Moreover, the language plainly shows that the offense which requires indictment or waiver thereof is "the offense for which such increased punishment may be imposed." Obviously the punishment for *a past, prior offense* cannot be subsequently increased *ex post facto*. But the punishment for the current offense in the case at bar can appropriately be enhanced and made more severe because the current offense is not the appellant's first violation of the criminal law, but he is a recidivist or "repeat offender." Hence the District Court's interpretation is clearly correct, even though as a matter of abstract semantics the words "offense for which" such increased punishment may be imposed might *in vacuo* mean "offense by virtue of which" or "offense by reason of which" such increased punishment may be imposed. But in the context the correct meaning is plainly discernible.

■ Adams next argues that it was error to impose the twenty year minimum mandatory sentence upon an aider and abettor.

However, 18 U.S.C. 2 plainly states:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

In other words, the ancient common law distinction between aiders and abettors, on the one hand, and principals, on the other, is for all practical purposes abolished. All participants are to be treated as principals. Liability as principal results "automatically", as Judge Posner pointed out in *U.S. v. Pino–Perez*, 870 F.2d 1230, 1233 (7th Cir. 1989), whenever a new criminal statute has been enacted since 1909.

The sentencing court's range of discretion with respect to all the participants is therefore the same. And where there is a mandatory minimum sentence applicable such range of discretion is non-existent or zero. The Congressional mandate supersedes and replaces whatever discretion the sentencing court might otherwise have had. (This is true under both pre-guideline and post-guideline sentencing.) Therefore the District Court did not err.

■ The complaint of a defendant in this respect should be addressed to the Legislative branch. The wisdom or policy of mandatory minimum sentences is highly dubious. As Circuit Judge Edward R. Becker, of the Third Circuit, Chairman of the Committee on Criminal Laws and Probation Administration of the Judicial Conference of the United States, recently pointed out in an interview published in the Third Branch:

While judges have long opposed statutory mandatory minimums, Congress finds this particular solution attractive, especially when trying to deal with the problem of drug trafficking. Both the 1986 and 1988 Anti–Drug Abuse Acts contained a number of new mandatory minimum penalties.

Mandatory minimum sentences constitute a legislative requirement that a judge impose a significant prison term on any offender who falls into a group defined on the basis of only one or two aspects of the offense of conviction. By promulgating mandatory minimum sentences, Congress removes the authority it delegated to the Sentencing Commission in the Sentencing Reform Act. Judges have no discretion to impose a lower sentence when sentencing an offender convicted under a mandatory minimum statute.... Judges of the Third, Eighth, Ninth and Tenth Circuits have passed resolutions in opposition to mandatory minimum sentences. Acting on recommendation of our Committee, the Judicial Conference, at its March meeting, adopted a resolution urging Congress to reconsider the wisdom of mandatory minimum sentencing statutes. Although we have been without success thus far, we will continue to press the point with Congress at every turn.

Finally, Adams argues that he should have been given a downward adjustment because he was less culpable that the supplier of the "crack".

However, as mentioned previously, Adams participated in the transaction "for the money" but failed to reveal the amount he was to receive, so quantitative comparison with his codefendant is not possible. Adams, by introducing the supplier to Robinson, was *causa sine qua non* of the offense.

In any event, Adams concedes (Opening Brief, p. 32, n. 14), in view of this Court's holding that the mandatory minimum sentence applies to him, "this issue becomes moot, because twenty years is higher than the bottom of his guideline range whether or not he is a minor or minimal participant."

### *Eliga appeal, No. 89–1201*

The first point Eliga argues is similar to the contention of Adams regarding nonproduction of *Brady* material, although Eliga clothes his contention more colorfully and speaks of knowing use of perjured testimony. The pertinent case law has been reviewed above in connection with the Adams appeal.

What Eliga really is complaining of, however, is Robinson's self-serving and inherently incredible pretensions that he was not a drug dealer, but a public-spirited, dedicated battler against drugs, "a point man in a big battle against crack" in the east Denver market. Robinson also told tall tales about his work as an informer and talked about a California case involving the murder of a beautiful actress who was the girl friend of television actor Don Johnson of "Miami Vice." (Brief, 13–17).

■ Eliga next argues that it was error for the trial court to refuse to allow him to call a Denver Assistant District Attorney to testify that he considered Robinson to be "a B.S. artist." In view of the obvious delusions of grandeur manifested in Robinson's own testimony, and the extensive testimony attacking his credibility, the District Court had discretion to exclude this proposed testimony under F.R.E. 403 as cumulative.

■ Eliga next argues that use of the word "failure" in instructing the jury that "no inference of any kind may be drawn from the failure of a defendant to testify" implied that a nontestifying defendant was guilty of neglect or omission to perform a duty.

This argument almost amounts to the picayune. It derives no sustenance from *Carter v. Kentucky*, 450 U.S. 288, 289, 307, 101 S.Ct. 1112, 1122, 67 L.Ed.2d 241 (1981). In that case the trial court gave no instruction at all about a defendant's right not to testify when it had been requested. It is interesting that Justices Stevens and Brennan, concurring, "emphasize that today's holding is limited to cases in which the defendant has requested that the jury be instructed not to draw an inference of guilt from the defendant's *failure* to testify (italics supplied)." This quotation shows that "failure" is a natural and normal word to use in this context. Perhaps the revised formula in Devitt's treatise is an improvement. But it is settled law that the trial

court has discretion to choose its own wording when formulating instructions, provided they correctly state the law and adequately cover the issues involved in the case. *U.S. v. Pinto*, 838 F.2d 426, 435 (10th Cir.1988).

 Finally, Eliga argues that it was an abuse of discretion for the trial court to deny a downward departure from the guidelines sentence.

This issue is not appealable, and this Court lacks jurisdiction thereof. *U.S. v. Davis*, 900 F.2d 1524, 1529 (10th Cir.1990).

Accordingly the judgment of the District Court is

AFFIRMED.