UNITED STATES of America, Appellee,

v.

Matthew KINZLER, Arnold Benson, and Mark Lythgoe, Defendants,

Norman Lida, Defendant–Appellant.

No. 519, Docket 93–1892.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1994.

Decided May 16, 1995.

David Wikstrom, New York City, for defendant-appellant.

Christopher P. Reynolds, Asst. U.S. Atty. S.D.N.Y., New York City (Mary Jo White, U.S. Atty., Paul Shechtman, Asst. U.S. Atty., of counsel), for appellee.

Before: MAHONEY, McLAUGHLIN, and HEANEY,* Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Norman Lida appeals from a judgment entered December 27, 1993 in the United States District Court for the Southern District of New York, Pierre N. Leval, *Judge,* that convicted Lida, following a jury trial, of sixteen counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and one count of money laundering conspiracy in violation of 18 U.S.C. § 371. Judge Leval sentenced Lida to three years of probation, four months of home detention, 200 hours of community service during each of the three years of probation, and $850 in special assessments. For the reasons that follow, we affirm the judgment of the district court.

## Background

Lida's convictions stem from his surreptitious utilization of "merchant accounts" in connection with escort services. A "merchant account" is an account with a credit card company—such as American Express, MasterCard, or Visa—that enables a business to accept credit cards as a method of payment; signed credit card receipts may then be submitted to the credit card company for reimbursement. After the credit card company has billed the card holder (the merchant's customer), the company remits a check to the merchant for the aggregate amount of charges submitted by the merchant during a particular period, less a processing fee. Because escort services generally are fronts for prostitution,[1] and because there is a higher likelihood that card holders will contest charges from such illegitimate businesses, American Express, MasterCard,

and Visa have a policy against issuing merchant accounts to escort services.

In order to circumvent this policy, Lida and his co-conspirators (Arnold Benson, Matthew Kinzler, Mark Lythgoe, and Philip Zinke[2]) set up at least twenty apparently legitimate companies with names such as "Quicksilver Limousine," "Associated Limousine," "M & D Temps" and "Metro Catering," to obtain merchant accounts from credit card companies. The businesses described in the incorporation documents, d/b/a certificates, and merchant account applications filed by Lida, however, were sham companies that provided little or no goods or services to the public.

Rather, the merchant account charge slips, stamped with the name of one of the companies organized by Lida, were distributed to independently owned and managed escort services whose prostitutes accepted credit card charges for payment. A conspirator then purchased the completed slips from the escort services at eighty percent of face value, and the slips were submitted to the credit card companies for payment. Lida managed the transfer of money from the credit card companies to various bank accounts from which payments were made to the conspirators and the escort services, in addition to providing the legal documents for the sham businesses, and received approximately fourteen percent of the profits generated by the scheme.

As a result of this activity, Lida was charged in sixteen counts (each count pertaining to approximately a month of the charged activity) with money laundering violations of 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i), and one count of money laundering conspiracy in violation of 18 U.S.C. § 371. He was convicted on all seventeen counts, but the jury specified via special verdicts that

---

* The Honorable Gerald W. Heaney of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Evidence at Lida's trial established that the "escort services" that obtained merchant account charge slips from Lida and his co-conspirators actually engaged in prostitution. At oral argument, Lida's attorney conceded that "escort service" generally is a euphemism for prostitution, and Lida's brief on appeal implicitly recog-

nizes that the underlying illegal activity here was prostitution. Cf. *United States v. Montague,* 29 F.3d 317, 319 (7th Cir.1994) ("escort businesses generally ... are engaged in prostitution").

2. Benson and Kinzler pleaded guilty to violations of the Travel Act, 18 U.S.C. § 1952, and Lythgoe pleaded guilty to misdemeanor tax charges. Zinke acted as a government witness at Lida's trial.

**72**

Lida was found to have violated § 1956(a)(1)(B)(i), not § 1956(a)(1)(A)(i).

This appeal followed.

### Discussion

■ Lida's primary argument on appeal is that his conduct does not fall within the language or meaning of § 1956(a)(1)(B)(i) because: (1) he did not play any role in the management or operation of the escort services and never concealed his role or identity in setting up the sham businesses or submitting the charge slips for reimbursement; (2) he merely provided an intermediary service in arms-length transactions in the same way that NYNEX provides telephone service and Yellow Pages advertising to escort services; (3) none of the credit card companies alleges any loss of property as a result of the scheme; and (4) the government did not charge him with any other illegal activity, such as submitting false certificates of incorporation, tax evasion, promoting prostitution, or Travel Act violations.

In addition, Lida asserts that a money laundering prosecution for third-party processing of merchant accounts is "totally unprecedented." Thus, he claims that he was denied due process of law because he did not have fair notice that he could be prosecuted under § 1956 for participating in the scheme.

We address these contentions in turn.

#### A. *The Money Laundering Statute.*

Section 1956(a)(1)(B)(i) provides:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

. . . .

(B) *knowing* that the transaction is *designed* in whole or in part—

(i) *to conceal* or disguise the nature, the location, *the source,* the ownership, or the control of the proceeds of specified unlawful activity;

. . . . .

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

*Id.* (emphasis added).

■ Statutory interpretation starts with the language of the statute itself, and we read a statute applying the " ' "ordinary, contemporary, common meaning" ' " of the words used. *United States v. Piervinanzi,* 23 F.3d 670, 677 (2d Cir.) (quoting *Harris v. Sullivan,* 968 F.2d 263, 265 (2d Cir.1992) (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979))), *cert. denied,* — U.S. —, —, 115 S.Ct. 259, 267, 130 L.Ed.2d 179, 185 (1994); *see also United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). When the language of the statute is clear and does not contradict a clearly expressed legislative intent, our inquiry is complete and the language controls. *See Turkette,* 452 U.S. at 580, 101 S.Ct. at 2527; *Piervinanzi,* 23 F.3d at 677; *United States v. Skinner,* 946 F.2d 176, 178 (2d Cir.1991). Any ambiguity concerning the scope of a criminal statute, however, must be "resolved in favor of lenity." *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971) (citing *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955)); *see also United States v. Aslam,* 936 F.2d 751, 755 (2d Cir.1991).

■ A reading of the plain meaning of § 1956(a)(1)(B)(i) reveals no ambiguity, and we therefore decline Lida's invitation to apply the rule of lenity in this case. *See Turkette,* 452 U.S. at 587 n. 10, 101 S.Ct. at 2530 n. 10; *United States v. Concepcion,* 983 F.2d 369, 380 (2d Cir.1992), *cert. denied,* — U.S. —, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993); *cf. Skinner,* 946 F.2d at 177–78 (§ 1956(a)(1)(A)(i) clearly applicable to charged conduct and should be construed broadly). The statute manifestly prohibits Lida's scheme because: (1) the funds transferred by Lida and his cohorts to the credit

card companies are the "proceeds of some form of unlawful activity" within the meaning of § 1956(a)(1)(B)(i), *see* 18 U.S.C. §§ 1956(c)(7)(A), 1961(1)(B), 1952(a)(1), 1952(b)(1); (2) credit card companies deny merchant accounts for prostitution-related activity, including escort services; (3) the scheme to obtain merchant accounts for sham companies was designed to conceal the true source of the charges, i.e., prostitution; and (4) the jury found that Lida knew the illegal provenance of the proceeds and that the scheme was purposefully designed to conceal it from the credit card companies.

■ Contrary to Lida's contention, § 1956(a)(1)(B)(i) does not require an attempt to conceal the identity of the defendant; a scheme that conceals only the source of the funds falls within the purview of the statute. The statute explicitly encompasses a transaction "designed in whole or in part— ... to conceal or disguise the nature, the location, *the source*, the ownership, *or the* control of the proceeds of specified unlawful activity." § 1956(a)(1)(B)(i) (emphasis added). Thus, we agree with the Tenth Circuit that:

> To find that the money laundering statute is aimed solely at those transactions designed to conceal the identity of the participants to the transaction is to ignore the broad language of the statute.
>
> We see no reason why the concealment requirement may not be met by other affirmative acts related to the commercial transaction—acts designed to quell the suspicions of third parties regarding the nature, location, source, ownership or control of the proceeds of the defendant's unlawful activity. In short, the money laundering statute is not aimed solely at commercial transactions intended to disguise the relationship of the item purchased with the person providing the proceeds; the statute is aimed broadly at transactions designed in whole or in part to conceal or disguise *in any manner* the nature, location, source, ownership or control of the proceeds of unlawful activity.

*United States v. Lovett*, 964 F.2d 1029, 1034 n. 3 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 169, 121 L.Ed.2d 117 (1992).

Our interpretation of Section 1956(a)(1)(B)(i) is not novel, and several other Circuits have upheld convictions under Section 1956 in analogous circumstances. *See, e.g., United States v. Brown*, 31 F.3d 484, 486–89 (7th Cir.1994) (§ 1956(a)(1)(B)(i) applied to processing of telemarketing charges through third party merchant accounts in light of credit card companies' policy denying accounts to telemarketers); *Montague*, 29 F.3d at 318–22 (affirming conviction under § 1956(a)(1)(A)(i) of owner of escort service who processed credit card charges through fictitious horse-supply business); *see also United States v. Termini*, 992 F.2d 879, 881 (8th Cir.1993) (commingling of legal and illegal funds in single bank account constituted violation of § 1956(a)(1)(B)(i)); *United States v. Posters–N–Things Ltd.*, 969 F.2d 652, 661 (8th Cir.1992) (same), *aff'd on other grounds*, —— U.S. ——, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994); *United States v. Jackson*, 935 F.2d 832, 842 (7th Cir.1991) (same); *United States v. Sutera*, 933 F.2d 641, 648 (8th Cir.1991) (deposit of illicit funds in business bank account with intent to conceal their source violated § 1956(a)(1)(B)(i) even though no commingling with business funds occurred).

The Tenth Circuit cases invoked by Lida do not aid his cause. He points primarily to *United States v. Sanders*, 928 F.2d 940 (10th Cir.), *cert. denied*, 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991), which overturned money laundering convictions for the use of proceeds from drug sales to purchase two automobiles on the following rationale:

> We reject the government's argument that the money laundering statute should be interpreted to broadly encompass all transactions, however ordinary on their face, which involve the proceeds of unlawful activity. To so interpret the statute would, in the court's view, turn the money laundering statute into a "money spending statute." This interpretation would be contrary to Congress' expressly stated intent that the transactions being criminalized in the statute are those transactions "designed to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of speci-

fied unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i).

*Id.* at 946; *see also United States v. Garcia–Emanuel*, 14 F.3d 1469, 1474 (10th Cir.1994); *Lovett*, 964 F.2d at 1032–34. Obviously Lida did not engage in "ordinary" commercial transactions that happened to involve the proceeds of prostitution, but rather employed an elaborate plan precisely to conceal the unwelcome source of those proceeds from the credit card companies with which he dealt. His conduct virtually tracks the language of § 1956(a)(1)(B)(i).

### B. *Due Process and Fair Notice.*

We reject Lida's argument that he was deprived of due process of law because he had no fair notice that his activity might be prosecuted under § 1956. The clear language of the statute, especially in the context of its specific intent requirements, provided ample notice that Lida's scheme constituted unlawful money laundering. *See Jackson*, 935 F.2d at 838–39. The claimed novelty of this prosecution does not help Lida's cause, for "it is immaterial that 'there is no litigated fact pattern precisely in point.'" *United States v. Ingredient Technology Corp.*, 698 F.2d 88, 96 (2d Cir.) (quoting *United States v. Brown*, 555 F.2d 336, 339–40 (2d Cir. 1977)), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). Finally, we find *United States v. Insco*, 496 F.2d 204 (5th Cir.1974), upon which Lida primarily relies with respect to this issue, to be completely inapposite.

### Conclusion

The judgment of the district court is affirmed.