UNITED STATES of America, Appellee,

v.

**Richard COLLADO, Defendant,**

**Leopoldo Rivera–Rosa, Defendant–Appellant.**

No. 1811, Docket 95–1512.

United States Court of Appeals,
Second Circuit.

Argued July 18, 1996.

Decided Jan. 13, 1997.

Kenneth M. Tuccillo, New York City, for Defendant–Appellant.

Andrew Lachow, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Nancy J. Northup, Asst. U.S. Atty., New York City, on the brief), for Appellee.

Before: WINTER and LEVAL, Circuit Judges, and THOMPSON, District Judge.*

THOMPSON, District Judge:

Leopoldo Rivera–Rosa appeals the sentence imposed by Judge Martin after a jury convicted Rivera–Rosa of conspiring to import approximately eight kilograms of heroin into the United States in violation of 21 U.S.C. § 963. On August 18, 1995, Judge

Martin sentenced Rivera–Rosa to a 240 month term of imprisonment, to be followed by ten years of supervised release, and imposed a $50 mandatory special assessment. Rivera–Rosa appeals his sentence on two grounds: (i) the district court erred in enhancing his sentence in accordance with 21 U.S.C. § 851 because his prior felony offense was not prosecuted by indictment or waiver thereof, and (ii) the district court erred in determining the drug quantity attributable to him. For the reasons that follow, we find that: (i) based on 21 U.S.C. § 851(a)(2), a defendant's conviction for a prior felony offense cannot be used as the basis for enhancement of a sentence, in accordance with 21 U.S.C. § 851, unless that prior felony offense was prosecuted by indictment or waiver thereof, and (ii) the district court did not err in determining the drug quantity attributable to the appellant.

Accordingly, the judgment is reversed in part and affirmed in part, and the case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

In early 1990, Jose Rodriguez, a heroin distributor in Harlem, and Michael Fafowora, a Nigerian heroin supplier, agreed to smuggle approximately eight kilograms of heroin from Singapore and Thailand through the Dominican Republic and into the United States. In the first phase of their scheme, Fafowora would purchase the heroin in Asia for $10,000 per kilogram and stuff it into film cartridges, which, in turn, would be placed in small refrigerators and shipped to the Dominican Republic. In the second phase, the heroin would be repackaged and secreted on female couriers, who would then travel by commercial airline from the Dominican Republic to the United States.

In the fall of 1990, the first phase took place as planned. Rodriguez then contacted Rivera–Rosa in Puerto Rico. Rivera–Rosa had for a number of years been purchasing half-kilogram quantities of heroin from Rod-

* Honorable Alvin W. Thompson, of the United States District Court for the District of Connecti-   cut, sitting by designation.

riguez. Rivera–Rosa had expressed to Rodriguez an interest in purchasing some of the heroin that Rodriguez and Fafowora intended to import from Asia. In exchange for receiving a portion of the approximately eight kilograms of heroin at a reduced price, Rivera–Rosa agreed to escort two of the couriers as they traveled with the heroin from the Dominican Republic to Puerto Rico and then to New York.

On October 23, 1990, Rodriguez, Fafowora, four couriers and other co-conspirators traveled from New York to the Dominican Republic to effectuate the second phase of the importation scheme. Within two days, Rivera–Rosa arrived in the Dominican Republic from Puerto Rico. While staying at the Jaragua Hotel in Santa Domingo, Rodriguez and Rivera–Rosa had a number of discussions about the heroin transaction. Rivera–Rosa persuaded Rodriguez to change the original plan; he suggested removing the drugs from the couriers in Puerto Rico and selling the drugs there, rather than escorting the couriers and the drugs all the way to New York. Rivera–Rosa explained that he already had a client in Puerto Rico interested in purchasing one kilogram of heroin. Rodriguez agreed to sell the kilogram of heroin to Rivera–Rosa for $150,000.

On October 27, 1990, Rodriguez brought the approximately eight kilograms of heroin, which was still stored in film containers, to a room at the Jaragua Hotel. In Rivera–Rosa's presence, Rodriguez removed the heroin from the containers, weighed it, placed one to two kilograms of heroin in individual plastic bags and then secured the bags with masking tape, forming brick-shaped packages.

On October 28, 1990, as Rivera–Rosa waited in the hotel lobby, Rodriguez and Fafowora met in a hotel room with two of the couriers who had traveled with them from New York. Rodriguez and Fafowora taped packages containing a total of 3.4 kilograms of heroin to the women's bodies and told them that there had been a change in plans. They would not be taking the heroin all the way to New York. Someone would meet them at the airport in Puerto Rico and take all of the heroin from them.

After the heroin was secure, Rodriguez brought the couriers to the hotel lobby. Rodriguez met briefly with Rivera–Rosa and pointed out the two women (i.e., the couriers) Rivera–Rosa would be escorting to Puerto Rico and from whom Rivera–Rosa would be taking the heroin. Rivera–Rosa followed the couriers to the airport, boarded their plane and watched over them during the flight.

United States Customs Service agents arrested the two couriers and Rivera–Rosa shortly after they disembarked at the airport in San Juan, Puerto Rico and seized the 3.4 kilograms of heroin and numerous documents reflecting their travel to and their stay in the Dominican Republic. Agents also seized from Rivera–Rosa various address and telephone books and other papers which contained Fafowora's and Rodriguez' names and telephone numbers. That same day at Newark International Airport, United States Customs Service agents arrested the two couriers carrying the remaining 3.85 kilograms of heroin from the Dominican Republic and seized the heroin and their travel records.

Rivera–Rosa was convicted by a jury on February 25, 1994 and sentenced by Judge Martin on August 18, 1995. Prior to sentencing, Rivera–Rosa submitted to the court a letter, dated August 17, 1995, in which he set forth his objections to the Presentence Report. In that letter, he also requested a *Fatico* hearing on the question of whether he knew or foresaw the amount of heroin to be distributed pursuant to the conspiracy. Rivera–Rosa argued that his role was limited to that of a mere buyer of one kilogram of heroin. In sentencing Rivera–Rosa, the district court found that the 3.4 kilograms of heroin carried by the two couriers Rivera–Rosa escorted to Puerto Rico were attributable to him but made no determination as to whether the 3.85 kilograms of heroin carried by the other two couriers directly to New Jersey were attributable to him.

The district court imposed an enhanced sentence pursuant to 21 U.S.C. § 841(b)(1)(A), based on a prior felony information filed by the Government in accordance with 21 U.S.C. § 851. The prior felony information charged that in 1982 Rivera–

Rosa had been convicted under the laws of Puerto Rico for a drug offense, namely, possession of marijuana, and had received a sentence of two years' imprisonment. The laws of Puerto Rico do not provide for indictment by a grand jury.[1] Thus, Rivera–Rosa was not prosecuted in 1982 by indictment or waiver thereof.

The filing of the prior felony information resulted in Rivera–Rosa being subject to a twenty year mandatory minimum term of imprisonment. On August 18, 1995, the district court sentenced Rivera–Rosa to 240 months' imprisonment, to be followed by ten years of supervised release, and imposed a mandatory special assessment of $50.

## DISCUSSION

### A. Enhancement of Sentence in Accordance with 21 U.S.C. § 851

Rivera–Rosa makes four arguments related to the enhancement of his sentence, pursuant to 21 U.S.C. § 841(b)(1)(A), based on the prior felony information filed by the Government as required by 21 U.S.C. § 851. Section 851 sets forth the procedure that must be followed before a prior felony information can be filed and a defendant's sentence enhanced by reason of a prior conviction. In particular, § 851(a)(2) sets forth conditions that must be satisfied before the Government can file a prior felony information with the court. It provides:

> An information may not be filed under this section if the increased punishment which may be imposed is punishment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for *the offense for which*

*such increased punishment may be imposed.*

21 U.S.C. § 851(a)(2) (1981) (emphasis added).

The first argument made by Rivera–Rosa relates to the question of whether the phrase "the offense for which such increased punishment may be imposed" in § 851(a)(2) is a reference to the instant offense or a reference to the offense of prior conviction. Rivera–Rosa contends that the requirement of prosecution by indictment or waiver thereof relates to the prior felony offense, not the instant offense, and that § 851(a)(2) therefore barred the filing of a prior felony information in his case because Puerto Rico does not utilize a grand jury in its prosecutions. The Government contends that the statute requires that the instant offense, not the prior felony offense, must have been prosecuted by indictment. Every circuit court that has considered this issue has adopted the position urged by the Government.

While the circuit courts that have examined this issue have acknowledged that § 851(a)(2) is susceptible to more than one interpretation[2], none of them has concluded that it is ambiguous and considered the question of whether it is therefore appropriate that the rule of lenity be followed in applying this statute. After consideration of the principles underlying the rule of lenity, the language of § 851(a)(2) and the various arguments that have been advanced as to the proper interpretation of this statute, we conclude that the statute is ambiguous and that the rule of lenity should be followed in this case. Therefore, we also conclude that this case is one where the conditions under § 851

---

1. Puerto Rico R.Crim.P. 23 and 24.

2. *See United States v. Espinosa*, 827 F.2d 604, 617 (9th Cir.1987) (holding that the statutory language refers to the instant offense, "[a]lthough the statutory language is arguably susceptible of either reading ...."), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988); *United States v. Adams*, 914 F.2d 1404, 1407 (10th Cir.) (agreeing with rationale of *Espinosa* but acknowledging that "as a matter of abstract semantics the words 'offense for which' such increased punishment may be imposed might *in vacuo* mean 'offense by virtue of which' or 'offense by reason of which' such increased punish-

ment may be imposed"), *cert. denied*, 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990); *United States v. Burrell*, 963 F.2d 976, 992 (7th Cir.) (noting in response to the very argument advanced by Rivera–Rosa here that "[a]lthough this application of the familiar maxim of statutory construction is not without its appeal, we do not believe it trumps the careful reasoning set forth in *Adams* and *Espinosa*"), *cert. denied*, 506 U.S. 928, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992); *United States v. Harden*, 37 F.3d 595, 600 (11th Cir.1994) (quoting the above-referenced language from *Espinosa*, as well as the above-referenced language from *Adams* ).

for enhancement of a defendant's sentence were not satisfied.

As noted above, Rivera–Rosa makes several other arguments relating to § 851, namely: (i) that the prior felony information was not timely filed, *see* 21 U.S.C. § 851(a)(1), (ii) that the district court failed to engage in the statutorily required colloquy, *see* 21 U.S.C. § 851(b), and (iii) that the prior offense was not a felony. However, our conclusion that the prerequisites under § 851 for enhancing Rivera–Rosa's sentence were not satisfied obviates the need to address these three arguments.

### 1. The Rule of Lenity

"Statutory interpretation starts with the statute itself, and we read a statute applying the 'ordinary, contemporary, common meaning' of the words used." *United States v. Kinzler*, 55 F.3d 70, 71 (2d Cir.1995) (quoting *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir.) (internal quotations omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 259, 130 L.Ed.2d 179 (1994)). "When the language of the statute is clear and does not contradict a clearly expressed legislative intent, our inquiry is complete and the language controls." *Kinzler*, 55 F.3d at 71. "Any ambiguity concerning the scope of a criminal statute, however, must be 'resolved in favor of lenity.'" *Id.* (quoting *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)). "The rule of lenity serves to aid the court in interpreting a criminal statute only if there is an ambiguity." *United States v. Litchfield*, 986 F.2d 21, 22 (2d Cir.1993). "It comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Id.* (internal quotations omitted). "The rule of lenity is not used to narrow a statute that has an unambiguously broad thrust." *Id.*

■ "The rule of lenity requires the sentencing court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply." *United States v. Canales*, 91 F.3d 363, 367 (2d Cir. 1996) (internal quotation omitted). Thus, where there is ambiguity in a criminal stat-

ute, doubts are resolved in favor of the defendant. "The rule is inapplicable unless 'after a court has seized on everything from which aid can be derived, it is still left with an ambiguity.'" *Id.* (quoting *Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991)). "The particular provision must be facially ambiguous as well as ambiguous as applied to the particular defendant." *Canales*, 91 F.3d at 368 (citing *United States v. Plaza Health Laboratories, Inc.*, 3 F.3d 643, 646 (2d Cir. 1993), *cert. denied*, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994)).

### 2. The Competing Interpretations of § 851(a)(2)

■ There are basically three arguments that support the Government's position that the offense referred to in § 851(a)(2) is the instant offense. While each argument has some merit, each has material flaws as well.

The first argument set forth by the Government is, in substance, that failure to interpret § 851(a)(2) as applying to the instant offense would not only ignore the plain language of the statute but would also mean that a court would be increasing the penalty for the prior felony offense. Thus, the argument goes, there would be an *ex post facto* problem. This argument follows the logic of *United States v. Espinosa*, 827 F.2d 604 (9th Cir.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988), where the court reasoned:

> Although one may not be punished twice for the same crime, punishment for a second crime may be enhanced by reason of a second conviction.... Hence, a common sense reading of the phrase "offense for which such increased punishment may be imposed" is the current, or latest, offense.

*Id.* at 617. *See also United States v. Adams*, 914 F.2d 1404, 1407 (10th Cir.), *cert. denied*, 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990).

The flaw in this argument is that an *ex post facto* problem is not necessarily the result if one determines that the language at issue does not refer to the instant offense. While one may logically conclude under that

scenario that the language in question means that increased punishment is being imposed for the prior felony offense, that is not the only logical conclusion. The words "offense for which" could just as plausibly be construed to mean "offense by virtue of which" or to mean "offense by reason of which." *See Adams,* 914 F.2d at 1407. Either of these interpretations would be consistent with the conclusion that, although the statute refers to the prior felony offense, that prior offense is being referred to as the offense based on which the sentence for the instant offense is being enhanced.

The second argument advanced by the Government is that the terms "prior conviction(s)" and "previous convictions" are consistently used in § 851 when reference is being made to the prior felony offense or conviction, but neither of those terms is used in § 851(a)(2). *See* 21 U.S.C. §§ 851(a)(1), (b), (c)(1) and (2), (d)(1) and (e) (1982). This argument follows the logic of a second point in the analysis in *Espinosa,* namely that "[h]ad Congress intended [the appellant's] interpretation, it seems that the phrase simply would have read 'prosecution by indictment in the prior conviction.'" *Espinosa,* 827 F.2d at 617.

There are two flaws in this argument. To begin, in *Espinosa,* the court observes in support of this argument that "the other two usages of the term 'offense' in § 851 refer to the current offense. *See* 21 U.S.C. §§ 851(a)(1), (e) (1982)." *Id.* While that is one way of reading subsections (a)(1) and (e), an equally valid way to read those provisions is that the term actually being used is "offense under this part." In addition, although the court in *Espinosa* quite properly ob-

serves that had Congress intended to refer to the prior felony offense, it seems it would have used the phrase "prosecution by indictment in the prior conviction," it is an equally valid observation that had Congress intended to refer to the instant offense, it seems it would have referred to "an offense under this part," or simply to "the offense."

A third argument that has been advanced in support of the position taken by the Government[3] is that adopting the interpretation urged by Rivera–Rosa would lead to an "anomalous situation." *Espinosa,* 827 F.2d at 617. In *Espinosa,* the court reasoned that:

> [d]espite Congress's [sic] evident attempt in 1984 to broaden the scope of § 841(b) prior convictions to include state and foreign convictions (in addition to federal convictions), Espinosa's interpretation would exclude from the statute's ambit prior convictions in those states or foreign countries that happen to use a felony complaint system rather than a grand jury indictment system.

*Id.*

Although it is clear that Congress intended in 1984 to broaden the scope of § 841(b) prior convictions to include state and foreign convictions, it is not clear whether Congress was looking to expand the scope to include all state and foreign convictions or to include just those where the person either waived or was afforded prosecution by indictment. Unfortunately, that is the critical issue here, and there is nothing anomalous about the situation that results if § 851(a)(2) is interpreted to include within its scope all state and foreign convictions where the person either waived or was afforded prosecution by indictment.[4]

---

**3.** · This argument was not raised by the Government in its brief however.

**4.** It should be noted that in 1984 Congress amended § 841(b), not § 851. S.Rep. No. 98–225 at 258–59 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3440–41. The legislative history from 1984 recognizes that the scope of prior convictions that could be used as the basis for an enhancement would be broader after giving affect to the amendment, but it gives no indication whether Congress even considered the fact that some prior state and foreign felony convictions would not have been prosecuted by indictment or waiver thereof:

The amendment's description of the prior offense which may trigger the more severe penalty does, however, differ from the description used in current law. In current law, this enhanced sentencing is available only in the case of a prior federal felony drug conviction. The amendment would permit prior state and foreign felony drug convictions to be used for this purpose as well. The prior conviction language of current provisions of section 841 and of section 962 (relating to importation and exportation offenses) is amended in other provisions of the bill in a similar manner to include state and foreign, as well as federal, felony drug convictions.

Rivera–Rosa argues that the interpretation of § 851(a)(2) urged by the Government is wrong because it renders the language in question mere surplusage. All federal felony prosecutions are required to proceed by indictment. Accordingly, he argues, it would have been redundant for Congress to require that the instant offense be prosecuted by indictment or waiver thereof when it is impossible for the offense to be prosecuted any other way. Moreover, he argues, a requirement by Congress that the prior felony be prosecuted by indictment or waiver thereof is quite logical. Such a requirement provides an appropriate safeguard, namely, that the prior conviction, which is the basis for a substantial increase in the number of years a defendant is incarcerated, was the result of an indictment by a grand jury.

This argument does have its appeal. *See United States v. Burrell*, 963 F.2d 976, 992 (7th Cir.), *cert. denied*, 506 U.S. 928, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). However, it is not persuasive. It suffers from the fact that the interpretation urged by Rivera–Rosa is not the clear meaning of this statutory provision. It is not the only logical interpretation when one applies the "ordinary, contemporary, common meaning" of the words used. *Piervinanzi*, 23 F.3d at 677. In reaching the opposite conclusion as to the meaning of this provision, the court in *Espinosa*, in a carefully reasoned opinion, saw its interpretation as "a common sense reading." *Espinosa*, 827 F.2d at 617. In *Adams*, the court concluded, also after careful reasoning, that "in ... context the correct meaning is plainly discernable." *Adams*, 914 F.2d at 1407. Thus, in simple terms, it is difficult to conclude that the interpretation urged by Rivera–Rosa is the clear meaning of this statutory provision where five circuit courts have after careful reasoning, or thoughtful consideration of such reasoning, reached the opposite conclusion.

Having considered the arguments in support of the competing interpretations of § 851(a)(2), we are persuaded that it is ambiguous.

### 3. Application of the Rule of Lenity

We conclude, based on the foregoing analysis, that there is absent with respect to § 851(a)(2) an "obvious intention of the legislature," *Huddleston v. United States*, 415 U.S. 814, 831, 94 S.Ct. 1262, 1272, 39 L.Ed.2d 782 (1974), to require that the instant offense, not the prior felony offense, have been prosecuted by indictment or waiver thereof. Thus, we conclude that § 851(a)(2) is facially ambiguous and also that it is ambiguous as applied to Rivera–Rosa in this case (*i.e.,* it "did not accord him fair warning of the sanctions the law placed on ... [his] conduct," *Canales*, 91 F.3d at 368.). Therefore, the rule of lenity should be followed in this case, and Rivera–Rosa's sentence should not be enhanced on the basis of his 1982 conviction in Puerto Rico. Accordingly, Rivera–Rosa's sentence should be vacated, and this case should be remanded to the district court for resentencing.

### B. The Drug Quantity Involved in the Offense

The second issue raised by Rivera–Rosa on appeal is whether the district court erred in determining the drug quantity attributable to him. Rivera–Rosa advances three arguments on this issue: (i) that the district court applied an incorrect legal standard in making its determination that 3.4 kilograms of the heroin distributed pursuant to the conspiracy should be attributed to Rivera–Rosa; (ii) that the district court erred in finding that Rivera–Rosa actively participated in the shipment of 3.4 kilograms of heroin; and (iii) that the district court erred in not conducting a *Fatico* hearing. For the reasons that follow, we affirm the district court's decision as to the drug quantity attributable to Rivera–Rosa.

*Id.* Moreover, a review of the legislative history for § 851 itself fails to provide any guidance on the issue before us. The legislative history for § 851 is quite brief. It provides simply that:
This section prescribes the procedure for establishing prior convictions so as to authorize imposition of an increased penalty upon a subsequent conviction.
H.R. Rep 91–1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4618.

### 1. The Legal Standard Applied

■ In narcotics cases, for purposes of the Guidelines and the operation of the mandatory minimum sentences, the district court must make a determination at sentencing of the quantity of drugs involved in the offense. *See* 21 U.S.C. §§ 960(b)(1), 963 (1982 and Supp.1996); U.S.S.G. § 2D1.1(a)(3). In a drug conspiracy case, "[a] court is entitled to consider 'all transactions engaged in by a defendant or by his coconspirators if the transactions were either known to him or reasonably foreseeable to him.'" *United States v. Podlog,* 35 F.3d 699, 706 (2d Cir. 1994) (quoting *United States v. Negron,* 967 F.2d 68, 72 (2d Cir.1992)). "The district court has broad discretion to consider all relevant information when making a finding concerning quantity of drugs involved...." *United States v. Pico,* 2 F.3d 472, 475 (2d Cir.1993). Moreover, "[t]he Government need only establish the amount of the narcotics foreseeable to the defendant by a preponderance of the evidence...." *Podlog,* 35 F.3d at 706.

Rivera–Rosa argues that the district court held that his mere awareness of the scope of the conspiracy was sufficient to render him responsible for the full amount of the imported heroin. In fact, the district court found that Rivera–Rosa "was aware of what was going on with respect to that other material and he participated in the conspiracy to bring it into the country." It noted that "the issue is the scope, his knowledge of the scope of the agreement and what was contemplated to jointly undertake in criminal activity." Thus, the district court's determination satisfied the "either known to ... or reasonably foreseeable to" standard. *Podlog,* 35 F.3d at 706.

### 2. Rivera–Rosa's Active Participation

Rivera-Rosa also takes issue with the district court's conclusion that the shipment of the 3.4 kilograms of heroin was known to or reasonably foreseeable to him. The reviewing court "shall accept the findings of fact of the district court unless they are clearly erroneous...." 18 U.S.C. § 3742(e). A finding of fact is clearly erroneous only if, after reviewing all the evidence, the appellate court is left "with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct. 1859, 1871–72, 114 L.Ed.2d 395 (1991). Moreover, in reviewing whether the facts supported a district court's findings, the evidence must be viewed in the light most favorable to the Government. *United States v. Paccione,* 949 F.2d 1183, 1208 (2d Cir. 1991), *cert. denied,* 505 U.S. 1220, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992). Finally, where the district court's findings are based on the testimony of witnesses, they are entitled to "special deference." *United States v. Beverly,* 5 F.3d 633, 642 (2d Cir.1993).

At sentencing, the district court rejected Rivera–Rosa's argument that his role in the conspiracy was limited to that of a buyer of one kilogram of heroin. The district court found that Rivera–Rosa agreed to and did oversee two of the couriers as they flew from the Dominican Republic to Puerto Rico with the approximately four kilograms of heroin strapped to their bodies. The district court also found that Rivera–Rosa was "in effect, the courier of the couriers," and that he "associated himself with the four kilogram venture, facilitated it, and that then became the scope of his agreement even though he only wanted one of those four kilograms." In light of this record and viewing the evidence in the light most favorable to the Government, we are not left with the definite and firm conviction that a mistake has been committed. Thus, we conclude that the district court's determination that the approximately four kilograms of heroin were known to or reasonably foreseeable to Rivera–Rosa was not clearly erroneous.

### 3. The *Fatico* Hearing

■ Finally, Rivera–Rosa takes issue with the district court's failure to conduct a *Fatico* hearing on this question. Prior to sentencing, in a letter commenting on the recommendations of the presentence report, Rivera–Rosa's attorney had requested a hearing

contest Rivera–Rosa's responsibility for the large quantity of drugs being attributed to him. But, based on the colloquy at the sentencing hearing, the court was entitled to infer that Rivera–Rosa had abandoned the request and had no witnesses to call. Rivera–Rosa made no sign that he sought to present any testimony. The court engaged in substantial colloquy with counsel about the disputed issues and then declared that it was prepared to decide. The court announced a decision adverse to Rivera–Rosa and proceeded to impose sentence. At no point did Rivera–Rosa protest the failure to conduct a hearing.

Furthermore, the court had heard the Government's witnesses at trial, and Rivera–Rosa had cross-examined them. In view of the fact that Rivera–Rosa did not offer his own testimony or any other, there was no reason to conduct any further evidentiary hearing. We conclude that the district court was wholly within its proper discretion in proceeding to sentence without an evidentiary hearing.

CONCLUSION

For the reasons stated, the judgment is reversed in part and affirmed in part, and the case is remanded for further proceedings consistent with this opinion.

WINTER, Circuit Judge, concurring in the result:

I concur in virtually all of the analysis in Judge Thompson's excellent opinion. I would not, however, place as much emphasis as he does on the rule of lenity.

I agree that the statutory language in question is ambiguous but believe that there is no need for a tie breaker to resolve the ambiguity. As his opinion notes, the government's reading of Section 851 creates a redundancy that makes virtually no sense. If the language "the offense for which such increased punishment may be imposed" refers only to the offense charged in the particular case, the language is entirely superfluous because that Section applies to offenses that can be prosecuted only by indictment or waiver thereof. Appellant's interpretation of the statute, while concededly not compelled by the plain language, makes sense because it insures that a substantial increase in penalty will not be imposed unless the prior crime was of a serious nature. Where an ambiguity admits of two interpretations, one of which creates an inexplicable redundancy and the other of which makes sense, I see no need to revert to the rule of lenity to resolve the ambiguity. Otherwise, I concur in Judge Thompson's opinion.